```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE EASTERN DISTRICT OF TEXAS
                            TYLER DIVISION

TRACBEAM, LLC                    )
                                 )    DOCKET NO. 6:11cv96
     -vs-                        )
                                 )    Tyler, Texas
                                 )    9:00 a.m.
AT&T, INC., ET AL                )    November 8, 2012
```

```
                    TRANSCRIPT OF MARKMAN HEARING
                 BEFORE THE HONORABLE LEONARD DAVIS,
                 UNITED STATES CHIEF DISTRICT JUDGE
```

```
                    A P P E A R A N C E S
```

```
      (SEE ATTORNEY SIGN-IN SHEETS ATTACHED TO THE MINUTE ENTRY
                    OF THIS HEARING.)
```

```
COURT REPORTER:          MS. SHEA SLOAN
                         211 West Ferguson
                         Tyler, Texas  75702
```

```
Proceedings taken by Machine Stenotype; transcript was
produced by a Computer.
```

```
 1                  P R O C E E D I N G S

 2             THE COURT:  Please be seated.

 3             All right.  Ms. Ferguson, if you will call the

 4   case, please.

 5             THE CLERK:  Court calls Case No. 6:11cv96,

 6   TracBeam, LLC v. AT&T, Inc., et al.

 7             THE COURT:  Announcements.

 8             MR. BUNT:  Good morning, Your Honor, Chris Bunt here

 9   on behalf of TracBeam, with Greg Dovel and Jeff Eichmann from

10   Dovel & Luner.  And Charles Ainsworth from Parker Bunt &

11   Ainsworth.  We are ready to proceed

12             THE COURT:  Okay.  Very good.

13             Defendants.

14             MR. KENNERLY:  Chris Kennerly, Your Honor, for AT&T.

15   With me is my associate Jon Swenson, and our Local Counsel is

16   Mr. Trey Yarbrough.

17             MR. BELUSKO:  Good morning, Your Honor.  Vince

18   Belusko on behalf of Defendant Cellco, also known as Verizon

19   Wireless.  Also with me is Mark Noonen, David Yang, and our

20   Local Counsel Mike Jones.

21             MR. HILL:  Good morning, Your Honor.  Wesley Hill on

22   behalf of Defendant Skyhook.  Also with me is Josh Stern.  We

23   are ready for the hearing this morning.

24             THE COURT:  Okay.

25             MR. JONES:  Your Honor, Mike Jones here on behalf of
```

3

1    Google and Verizon.  And also here is Mr. Alan Albright and

2    Mr. Chris Schenck and our In-house Counsel, Ms. Karen

3    Robinson.

4            MR. THAMES:  Good morning, Your Honor.  Glenn Thames

5    for MetroPCS and TCS.  Here with me today are Ed Pennington

6    and Sid Pandit.  And our in-house Counsel from MetroPCS is Mr.

7    Garreth Sarosi.

8            MR. KHALIQ:  Good morning, Your Honor.  I am Imran

9    Khaliq here for Intervenor Location Lab.

10           THE COURT:  Anyone else?

11           All right.  Very well.  We have a lot to do and not

12   a lot of time to do it, so I think we better get started.

13           If each side would like to make, I mean, a

14   five-minute or less opening statement or overview of whatever

15   you think is the most important for the Court to focus in on

16   today, and we will get started working through the terms.

17           So I recognize Mr. Eichmann.

18           MR. EICHMANN:  Your Honor, today we have binders for

19   the Court, and in the front page of the binder you will see a

20   list of the order of terms that we plan to address today.  I

21   won't go through them all right now, but the parties have

22   agreed to the ordering of these, and I believe there is also a

23   paper sheet in front of you addressing that.

24           THE COURT:  Okay.

25           MR. EICHMANN:  And the parties have also agreed to

1    address the indefiniteness arguments at the end.  I have one

2    slide for the opening statement.  This identifies three

3    fundamental disputes that the Court will see in both the claim

4    construction arguments and the indefiniteness argument.

5            The first one is that the Court will see for many of

6    the terms we have proposed no construction is necessary.  And

7    this is because many of the claim terms and phrases are

8    self-descriptive.  And what I mean by that is the claim itself

9    says what it does, the claim term.

10           So by analogy if you know you have something like a

11   can opener, that is a self-descriptive term.  A can opener is

12   something that you use to open cans.

13           Similarly, if you have location information, that is

14   information about a location or related to a location.  A

15   mobile station location estimation determiner, that is

16   something that determines estimates of mobile stations and

17   their locations.

18           In addition, no construction is necessary for many

19   of these terms because the surrounding claim language defines

20   the terms.  We will also see this with the location

21   information terms, which are included in phrases that

22   specifically say what that location information needs to

23   include and what it doesn't need to include.

24           And the Court has probably noticed in reading these

25   patents that they are quite lengthy, some of these claims.

1    And that is because the patentee took the time to specifically

2    set out in each of those claims, the limitations of the

3    invention.  The result of that is that many of those claims

4    and their limitations do not require construction.

5           Now, defendants in most of their constructions, seek

6    to import limitations.  They do this in two primary ways.

7    They rely upon sections of the specification that use the

8    phrase "the present invention," and they mischaracterize the

9    law regarding that.

10          When you use the term "the present invention," as

11   the case law says, you have to use it consistently and

12   uniformly for the embodiment that is being described to be

13   applied to all of the claims.  And you will see, Your Honor,

14   that they cannot identify any instance in which that phrase

15   "the present invention" is used consistently and uniformly to

16   describe an embodiment that must be imported into all of the

17   claims.

18          Another important point on this is that there is no

19   "the present invention" here.  These are very lengthy

20   specifications, and there are over 300 claims that have issued

21   from them.  To take one or two of the examples of over 185

22   instances when the phrase "the present invention" is used and

23   to say that those instances require that each one of those

24   300-plus claims require this embodiment, that is not the

25   proper construction here.  That is the type of importing that

1    is expressly forbidden by the law.

2           The other primary argument they use to import

3    limitations is they often say, well, this is the only

4    embodiment disclosed.  The law is very clear, that even if

5    there is only one embodiment disclosed in the specification,

6    you cannot limit the claims to that embodiment.  And,

7    furthermore, in most cases, if not all where they say this is

8    the only embodiment disclosed, they are actually just wrong as

9    a factual matter.

10          Finally, when we turn to the indefiniteness motion,

11   what we will see is their analysis goes only halfway.  The

12   defendants and their expert identify potential ambiguity in

13   certain claims or phrases.  And from there they conclude that

14   the claim must be indefinite.  They don't sit down and take

15   the time to actually figure out how to resolve that ambiguity

16   in the way that the law requires.

17          Our expert does; and for those reasons set forth in

18   his declaration, which we will explain, again, later this

19   afternoon, we believe the claims are not indefinite.

20          Thank you.

21          THE COURT:  Okay.  Thank you.

22          Response.

23          MR. KENNERLY:  Your Honor, Chris Kennerly for

24   defendants on behalf of AT&T.  These patents, as plaintiff

25   acknowledges, are long and complex and confusing, frankly.

1          And many of the claim terms that we are being asked

2    to consider here are not commonly understood.  Plaintiff's

3    constructions generally rely on taking the words of a claim

4    phrase that is not at all clear, moving them around a little

5    bit, failing to provide any clarity, and also failing to

6    address, really, what is a fundamental dispute about claim

7    scope that the Court should resolve.

8          The constructions that defendants have proposed are

9    necessary to add clarity because of the ambiguity in these

10   claim terms.  And there is strong support in the evidence to

11   provide the meanings that defendants give to these terms.

12         Defendant's constructions by and large do not rely

13   on statements about the invention in the form of importing

14   limitations or of relying on disclaimers or disavowals; but,

15   as Your Honor well knows from the Phillips case, the

16   specification is always highly relevant to the claim

17   construction analysis.  And the specification provides the

18   necessary context to give some sense of the meaning of the

19   claim terms.

20         By and large defendants always rely first on the

21   claim language itself, the surrounding claim language, and

22   then look to the specification to confirm those

23   constructions.

24         There are a number of fundamental disputes that the

25   Court should resolve.  Those are not appropriate for the

1    jury.  And plaintiff's constructions by and large avoid those

2    disputes in hopes of getting to the jury and being able to

3    argue, essentially, anything.

4             It is appropriate for the Court at this time to

5    resolve those issues of claim scope, and those are the

6    fundamental disputes that we will talk about.

7             That's all I will say for now, Your Honor; and then

8    we will get into more specifics on the terms themselves.

9             Thank you.

10            THE COURT:  Okay.  Thank you.

11            Before we start into the claim construction, just in

12   reviewing the motions, I would like to take up and see if we

13   can get this disposed of first because I think it may be of

14   some urgency in the parties moving forward, and that is

15   Google's motion to sever, Docket No. 209.

16            Who would like to be heard with regard to that?

17            MR. ALBRIGHT:  Your Honor, Alan Albright.

18            Thank you, Your Honor.  This is a unique motion to

19   sever.  This isn't the garden variety we would like to be

20   somewhere else motion I'm sure you see all the time.

21            THE COURT:  I'm glad you want to be here.

22            MR. ALBRIGHT:  We do want -- actually, Your Honor,

23   we are perfectly happy being here.  This has to do with the

24   propriety of whether or not -- you know, I tried a case last

25   year and thought it was a great Court, so we are happy to be

1   here.

2          THE COURT:  Well, you got a good result.  People

3   usually feel that way --

4          MR. ALBRIGHT:  Yes, sir.

5          No, sir.  This has to do with a unique situation in

6   which two of the defendants in this case, Skyhook and Google,

7   are also adversaries in litigation ongoing.  It is a situation

8   where the Counsel -- and we believe that Skyhook ought to be

9   able to select whatever Counsel they deem appropriate to

10  represent them in this case that TracBeam has brought.

11          The problem for Google is that it is the same

12  Counsel that is helping them out in the wars that are being

13  fought between Skyhook and Google.  The reason we are

14  requesting a severance in this case, Your Honor, is we believe

15  that regardless, even if there is an agreement in place by the

16  attorneys at Wilmer Hale who are doing the actual prosecution

17  of the patents not to review confidential information of

18  Google's, inevitably we are just concerned that there will be

19  some slippage of that information as they are preparing their

20  case against TracBeam.

21          And so Google's request for severance is really

22  based entirely on what we see as a danger of us being in a

23  situation where we have got to provide information that we

24  made available to Counsel that is also currently adverse to us

25  in other matters unrelated to this.  I believe that one of the

1 primary arguments that TracBeam makes is that what we ought to

2 be doing -- that what Google ought to be doing is asking the

3 Court to disqualify Wilmer Hale.

4          Not only do we not believe that that would be the

5 appropriate step for the Court to take or the proper remedy;

6 but we are not even certain after we look at the Court --

7 I'm always hesitant to tell the Court it can't do something,

8 but in this situation I don't know that Google will have a

9 real basis on these facts to ask this Court to disqualify

10 Counsel that Skyhook wants to use in this case.

11          For example, a typical situation would be where

12 Skyhook had been our Counsel and was familiar with

13 information, and there was some reason for you to do that.

14          THE COURT:  What is Skyhook's position?

15          MR. STERN:  Thank you, Your Honor.  Josh Stern from

16 Wilmer Hale.  Our position, we do not oppose Google's motion

17 to sever for many of the reasons articulated by Google.

18 Skyhook will also seek severance as it gets closer to trial.

19 We understand, obviously, Google's reasons for moving at this

20 point.

21          I just would simply point that Wilmer Hale has

22 erected an ethical screen to screen the attorneys who are

23 doing prosecution of Skyhook patents from -- that are also

24 working on this litigation -- from receiving Google highly

25 confidential information.  That being said, we do not oppose

1    the motion to sever here.

2              THE COURT:  Okay.  What is TracBeam's position?

3              MR. EICHMANN:  Your Honor, we are certainly not

4    asking or inviting them to disqualify one of the other's

5    Counsel.  But you just heard from Google's Counsel that they

6    don't think they have grounds to bring a motion to disqualify.

7              We believe that if they don't have grounds to seek

8    disqualification, then they don't have grounds to say that the

9    existing protections that prevent confidential information of

10   the parties being used improperly, won't be able to be

11   followed in this case.

12             Counsel and the parties are presumed to be able to

13   follow the provisions of the protective orders that have been

14   entered.  This is no different from many other cases that are

15   for this district and others where there are co-defendants,

16   mutual parties who at the time have common interests, in this

17   case vis-a-vis TracBeam, but are oftentimes at heads with each

18   other in other litigation.  So we do not think this is a

19   unique case in any manner that requires severance.

20             THE COURT:  Okay.  Are you at the point that you are

21   concerned about -- that Google is concerned about its

22   confidential information being accessible by Wilmer Hale's

23   attorneys, or at what point in the litigation will you be to

24   that point?

25             MR. ALBRIGHT:  Your Honor, I was just -- as of today

1   Google, for example --

2           THE COURT:  I'm sorry.

3           MR. ALBRIGHT:  Going through the Markman Hearing,

4   for example, we are not at that point yet.  The point would

5   be, Your Honor, when we begin preparing experts, when we begin

6   providing information to experts.

7           I would suggest as soon as frankly as soon as --

8   frankly, as soon as plaintiff sends its discovery, which I

9   don't think has been sent yet, that we would request our

10  production of our confidential information to the plaintiff.

11          Obviously, we would have to provide that to Wilmer

12  Hale and Skyhook.  At whatever point it is that Google is

13  required to provide sensitive, highly confidential information

14  that Wilmer Hale would have access to, at that point I believe

15  Google would be concerned and would be requesting severance.

16          As far as going forward today, for example, Your

17  Honor, I think it would be perfectly fine.  We are certainly

18  not advocating doing that in advance of today.

19          THE COURT:  Let me ask Skyhook's Counsel, what would

20  be your response to if the Court just entered a prosecution

21  bar prohibiting Wilmer Hale from actively prosecuting any of

22  the patents related to the technology in either suit?

23          MR. STERN:  Thank you, Your Honor.  I believe that

24  we would not oppose the prosecution bar.  We would simply ask

25  that any prosecution bar be limited to circumstances where the

1   attorneys at issue that are prosecuting patents, have had

2   access to highly confidential information, which I believe is

3   the general practice of prosecution bars in this district and

4   in many protective orders.

5          And in that circumstance, we, as we have already

6   done, would screen the attorneys from Wilmer Hale that are

7   doing patent prosecution from Skyhook, from receiving any

8   highly confidential information from Google.

9          THE COURT:  Let's move on with the Markman.  I

10  appreciate that information.  I will try to sort that through

11  and get you a ruling on it.

12         So let's start with what will be the first term,

13  Group 4.

14         MR. EICHMANN:  Yes, Your Honor.

15         THE COURT:  All right.

16         MR. EICHMANN:  This is the location information

17  terms, and it consists of three very similar terms that all

18  include the word "location information" and variations on it.

19         Now, we have proposed a construction for this that

20  means information related to a location.  This is the

21  construction we have for the first two of these terms.  Let's

22  talk about what is included by our construction.

23         Information related to location could include the

24  various different types of information shown on the spectrum

25  below.  It could include data regarding locations including

1    satellite locations and time stamps of when signals have been

2    received.  It could include measurements, which calculate the

3    time difference of arrival for signals that are received or

4    signal strength or timing advance.

5            And it also includes actual estimates where you are

6    saying, okay, let's look at these data and these measurements

7    and determine where we think this mobile station is.  Is it

8    within a thousand meters of this location?  Is it at this

9    address on the street?  Or actually is it such that we can't

10   actually provide an estimate at this time?  It is

11   indeterminate.

12           So these are all of the things that we believe the

13   ordinary meaning of location related information and location

14   information encompasses.

15           We have a similar construction for location related

16   response information that includes the word "response" in the

17   construction.  This is very similar.

18           Defendants have two competing constructions.  There

19   is the carrier's and Google's construction, and then Skyhook

20   has a variation on that.  They propose these for each of the

21   three terms.

22           And what the carriers and Google say is that this is

23   information that must actually identify location.  And in

24   Skyhook's case they say it has to indicate a determined

25   location.

1              And what they mean by this is set forth in their

2    brief.  On Page 10 of their brief they explain that the

3    location related terms, information related terms, must

4    include a location estimate or an estimate of the location of

5    a mobile station.  This is how they explain their

6    constructions, and this is what they mean by them.

7              So going to look first at the claim language and

8    show why that construction is wrong.

9              On the left is the claim language, the actual

10   language of these terms.  On the right is what defendants will

11   seek to apply in their non-infringement arguments and their

12   validity arguments.  They are going to say this requires a

13   location estimate.  Those words do not match up.

14             Information, the actual claim language, does not

15   mean estimate.  Location information is not a location

16   estimate.  Location information includes estimates, as well as

17   other types of location related information.  And that is this

18   entire range here from data to measurements to estimates.

19   Estimate is included, but it is not the only type of location

20   information.

21             Now, we know that the words of a claim are generally

22   given their ordinary and customary meaning with two

23   exceptions.  One, where the patentee sets out a definition or,

24   two, where the patent disavowals the full claim scope either

25   during prosecution or in the specification.

1          So we will take a look at the specification because

2     that is all they rely upon.  They don't point to the

3     prosecution history for this one.

4          In their brief at Page 10 defendants assert that the

5     specification further confirms their interpretation; and they

6     say, for example, the specification refers to location

7     information as location hypotheses.  And this is another word

8     that defendants use interchangeably with location estimate.

9          They have various cites to the specification, and

10    not one of these cites provides a definition for any of the

11    location information terms.  In fact, none of these cites use

12    the term location information or location related information,

13    or the third one, the response location information.  Nor does

14    any one of these cites include anything that remotely

15    resembles a disclaimer or disclaiming statement.  And you also

16    will not see defendants arguing either of those things.

17         They simply start and say location information is

18    referred to as location hypothesis, see all these cites.  And

19    then when you get there, there is nothing there that is a

20    definition or a disclaimer.

21         This is not because the specification doesn't use

22    the -- actually use the term location information.  That

23    appears something like 39 times in the specification.  And it

24    appears in ways that confirm location information is not

25    limited to location estimates.

1           For example, location information may include

2   measurement results related to signals.  This is from Column

3   27, Lines 46 to 53 of the '231 patent.  In this section the

4   specification explains that each LBS -- that denotes a

5   location base station -- detecting the target MS --  the

6   mobile station -- may telemeter back to the LC -- location

7   center -- measurement results related to signals from and to

8   the target MS.

9           This passage continues.  That the target MS will

10  itself telemeter back its own measurements of the detected

11  LBS.  And then in the very next line, the term location

12  information is used, the actual claim term.  This term is used

13  to refer back to what was just described, measurements related

14  to -- excuse me, measurement results related to signals and

15  the measurements of the mobile station.

16          So what this shows is that location information in

17  this instance is used to refer to the measurements portion of

18  the spectrum, of all of the different things that location

19  related information may include.

20          This same paragraph also continues and confirms that

21  location information and the similar term, location related

22  information, are used to generate estimates.  It states, this

23  new location information, in conjunction with location related

24  information, can be used to locate the target MS.

25          It doesn't say that it is or that it constitutes a

1  location estimate or a location of the target MS or that it

2  identifies a location.  It says this is information that we

3  are going to use to locate the target.  It is going to be used

4  to generate an estimate.

5          There is a similar passage at paragraph -- excuse

6  me -- at Column 110, Lines 35 to 38.  In this reference,

7  location information is described as something that is used to

8  derive a location estimate.

9          The specification states that location information

10 upon which a derived location estimate for the MS -- excuse

11 me -- MBS, mobile base station, depends.

12         THE COURT:  Thank you.  Let me hear a response,

13 please.

14         MR. KENNERLY:  Your Honor, in response, I would

15 like to actually address, if I may, TracBeam's Slide 2 first.

16         Can I do that?  (Pause in proceedings.) This one.

17         And can you advance to where you have the -- there

18 you go.  Thank you.  Thank you, Counsel.

19         Your Honor, there is a fundamental dispute about the

20 location information terms.  And it boils down simply to

21 whether these terms must actually tell you where the mobile

22 station is, in some way.  It could be an estimate.  It might

23 be something else.  Estimate seems to be the way it is

24 described.  Hypothesis.  Whatever word you want to use.  But

25 it must tell you where the mobile station is.  These

1   claims, these patents are all about telling you where the

2   mobile station is.

3           If you look at the type of location information that

4   plaintiff seeks to cover with this term, it includes things

5   that tell you nothing about the location of the mobile

6   station.  You will see under the data category, you have

7   satellite position.  That is the position of the satellite.

8   That doesn't tell you anything about the location of the

9   mobile station.

10          THE COURT:  Can that information be used to

11  determine the location?

12          MR. KENNERLY:  Ultimately, certain data can be used

13  to determine a location, and the measurements that are

14  indicated, could be used to determine a location.  Now, I can

15  show you in the claim language --

16          THE COURT:  Excuse me.  If that is data, then would

17  that not be information that would be used to determine the

18  location?

19          MR. KENNERLY:   Information -- data is information.

20  In the context of these claims and what they describe and what

21  has to happen, which is identifying a location, data does not

22  give you that.  If you look at the structure of the claims --

23  and I have slides for this --

24          THE COURT:  But isn't that what the claim, though,

25  is about, is determining the location?

1          MR. KENNERLY:  If you have -- for example, under the

2    estimate category, we have indeterminate.  That means I can't

3    tell you anything about the location of the mobile station.  I

4    have tried.  I have looked.  I can't tell you anything.  If

5    you run that through the claim, you are not able to identify

6    the location of the mobile station.  That claim doesn't work.

7    The whole point of the claim is not realized.

8          If you look at the claim language and all of the

9    statements about the invention in the specification, it is

10   about identifying or determining the location of a mobile

11   station.

12         And certain of the things that TracBeam would say

13   are included within these terms, which don't have a commonly

14   understood meaning, which do have a meaning in the context of

15   the claims, do not allow you to do that.

16         For example, this indeterminate category is no

17   information.  So the TracBeam argument boils down to location

18   related information can include no information; nothing;

19   nothing that tells you about where the mobile station is.  And

20   that can't be.

21         These measurements that TracBeam seeks to include.

22   There is claim language, which I can show you in the slides,

23   that says using the wireless signal measurements to determine

24   the location information.

25         Well, if location information includes the

1   measurements, the claims read using the measurements to get

2   the measurements.  Or the claims say the location information

3   of the mobile station.

4          Plugging in TracBeam's definition or what it would

5   include, it would say measurements of the mobile station.

6   That is not at all what those claims say.  So the only thing

7   that allows these claims to work, the only thing that makes

8   sense in the context of the actual claim language and of the

9   specification, is something that tells you where this mobile

10  station is.

11         And, indeed, the whole point of these patents if you

12  boil them down, they are long, they are complicated, the point

13  is taking existing wireless location technologies, using them

14  in combination, in some way to get a better estimate, to

15  identify more accurately or more reliably where the mobile

16  station is.

17         But nothing, no information about location cannot be

18  location related information.  Data about the position of the

19  satellite -- for example, the claims talk about a first

20  technique and a second technique.  If location related

21  information includes satellite position, I get a satellite

22  position using one technique.  I get a satellite position

23  using a second technique.  I can't determine a mobile station

24  location with that.  That doesn't tell me anything about where

25  it is.

1          The only thing that makes sense in the context of

2     the claims and the specification if you run this through, is

3     that the location information terms have to identify in some

4     way where the mobile station is.  It doesn't have to be within

5     a certain accuracy.  It could be a street.  It could be within

6     a thousand meters of this position.  Something that provides

7     an affirmative statement or affirmative information about

8     where that mobile station is.

9          THE COURT:  I guess that estimating that you are

10    talking about, isn't that concept explicitly in other portions

11    of the claims?

12         MR. KENNERLY:  There are references to estimates in

13    every claim, essentially.  So Claim 1 talks about generating a

14    resulting estimate, a better, more reliable estimate using the

15    two things that you have from the two techniques --

16         THE COURT:  So aren't you really then talking about

17    what that location information -- what you do with that

18    location information in the other parts of the claim versus

19    what location information is?

20         MR. KENNERLY:  Well, but that surrounding claim

21    language has to provide context for what that term means.  And

22    if you look at some of these things that plaintiff says are

23    covered and you plug those through, it doesn't make sense.

24         For example, under measurements, the first thing

25    under that center column, time difference of arrival.  If I

1    get a time difference of arrival from one technique and a

2    satellite position from another technique, that doesn't tell

3    me anything about where that mobile station is.  That can't be

4    the location information that is talked about.

5            THE COURT:  But can that information be used by

6    subsequent elements of the claim to determine where the

7    location is?

8            MR. KENNERLY:  Well, some of it might.  Certainly

9    the indeterminate one cannot be used to determine the

10   location.  It doesn't tell you anything.  It says I can't tell

11   you anything about the location of this mobile station.

12           THE COURT:  All right.  Response?

13           MR. EICHMANN:  Your Honor, with respect to the

14   indeterminate example, that does provide information.

15   Providing information that the location of this mobile station

16   cannot be found, cannot be determined at this time, that is

17   information that is relevant to the system that is trying to

18   figure out what to provide to the requesting party as an

19   estimate.

20           As Counsel noted, there are multiple different

21   techniques that are used in each of the different claims.

22   Usually two.  So you will have one set of location information

23   and then another; and then at the end, there is this resulting

24   process of determining what to actually provide as the

25   estimate.

1              If in the first case the first location information

2    says it is indeterminate, then that is not going to be one

3    that is used in the actual estimate.  It is not going to be

4    one that shows up in the estimate.  That is why you have the

5    ability to use what is in the second one.

6              In addition, the specification will also -- this is

7    sort of similar to the indeterminate example, but it certainly

8    is an example of not a location estimate.  The specification

9    expressly describes circumstances where you don't know where

10   the mobile station is, but you know where it isn't.

11             And you will see there is these references to

12   confidence values.  They will see you get a confidence value

13   of a positive 1, if I know with great certainty that it is in

14   this location.  0, if I am not sure.  And a negative 1, if I

15   know it is not at all in this location.  That can be useful

16   for a variety of different applications.

17             The second point is that --

18             THE COURT:  Let me be sure I understand.

19             MR. EICHMANN:  Yes.

20             THE COURT:  So taking Opposing Counsel's point, if

21   the first location information is data, that alone won't give

22   you an estimate, right?

23             MR. EICHMANN:  Well, there are these things that are

24   called determiners, and there is different names for them in

25   different claims; estimators, determiners.  They take the data

1   and they are the things that will then figure out how to

2   locate the estimate -- excuse me, how to provide an estimate.

3           So, yes, a satellite position itself isn't enough,

4   but that is not what is being reported at the end of the

5   process.  They are not just saying, hey, here is some random

6   satellite position.  That is input that comes into the various

7   components of the system that will provide that estimate.

8   There are so many different possible inputs.

9           Yes, you might find one that says we can't figure

10  out where he is over here.  You should go talk to this other

11  determiner over here.  That is exactly what is done in some

12  circumstances.

13          THE COURT:  Okay.  Thank you.

14          Final word.

15          MR. KENNERLY:  Your Honor, I would just add, if you

16  go up to someone on the street and you ask where something is

17  and they say, I can't tell you anything about where that is,

18  you don't have any information about where that thing is.

19          That is not information related to the location

20  other than the fact that it doesn't include any information

21  related to the location.

22          Plaintiff wants to cover exactly the situation that

23  Counsel described, which is you get nothing back from one of

24  the techniques; and, well, I guess I have got to go somewhere

25  else and try to figure out where this thing is.  That is not

1    what the claim talks about.

2              In fact, if you track through the language, you have

3    to get a value out of that first location information and a

4    value out of second location information; and then you have

5    got to generate a resulting estimate using those two values.

6    And the patent talks about that being a better, more accurate,

7    more reliable estimate.

8              But to take plaintiff's view, you have the complete

9    absence of any information about location, which isn't

10   location related information.  Then you need to derive a value

11   from the absence of information that you can then use to

12   generate a better estimate.  That can't work.  That does not

13   make sense.

14             The entire claim, the entire patent is about useful

15   information that identifies a location in some way.  It tells

16   you something about where it is.  And the complete absence of

17   that, cannot be location related information.

18             THE COURT:  Okay.  Thank you.

19             All right.  What will be our next group?  Group 10?

20             MR. EICHMANN:  The parties agreed to address this

21   group next, Your Honor, because it relates very specifically

22   to the location information terms and Counsel's last argument

23   about this notion of values, which we will get to in a moment.

24             So this is a set of five different terms from five

25   different claims, and they are very long phrases.  Each has

1    this notion -- or at least four of the five have this notion

2    of determining or a determination.  And they all use the short

3    phrase "at least one of."

4            Here is an example, a representative claim, Claim 1

5    of the '231 patent.  It requires outputting a resulting

6    location estimate, and it has a requirement here that the

7    determination of that resulting location estimate is dependent

8    upon at least one of (a) and (b).  (a) and (b) -- excuse me.

9    (a) is a first value obtained from the first location related

10   information.  And (b) is a second value obtained from said

11   second location related information.

12           So this is what you have here on the top left:

13   Outputting a resulting location estimate whose determination

14   is dependent upon at least one of (a) and (b).

15           Now we are going to walk through this with an

16   example of the location, the mobile station is located in

17   Tyler.

18           Here are two examples of potential location

19   information; two values.  The first value that says this

20   mobile station is within 500 meters of the cell tower at

21   College and Ferguson.  The second value says that this mobile

22   location is within 200 meters at the tower at Bow and Spring.

23   Let's walk through how this would work.

24           Example 1.  The resulting location estimate is

25   determined dependent upon just one, just (a).  In this case

1    value (a) is within 500 meters of the tower at College and

2    Ferguson.

3            So in the upper right corner this is what the

4    outputting -- the output resulting location estimate would

5    look like.  This was what goes back to the requesting party.

6            In Example 2 we have the output that is dependent

7    upon just (b).  In this case the reporting -- the requesting

8    party would be told this mobile station is within 200 meters

9    of a cell tower at Bow and Spring.

10           And the third example is where the output is

11   dependent upon both (a) and (b).  And because these two

12   overlap in this example, what the resulting estimate would

13   tell the person is that within this red circle that overlaps

14   the two, right around Goodman Park, that is where this mobile

15   station is located.  These are all covered by the claim

16   language.

17           We contend that this claim language is exceedingly

18   clear and requires no construction.  Defendants take this

19   language, and you will see in their construction in the lower

20   right, every word of this claim is copied over except the

21   phrase "at least one of."  They replace the phrase "at least

22   one of" with a simultaneous evaluation and/or combination of.

23           So where the claim says the determination is

24   dependent upon at least one of (a) and (b), they say it is

25   dependent upon a simultaneous evaluation and/or combination of

1    (a) and (b).

2              THE COURT:  So are you saying that there can just

3    be (a) and that the claims will work?  Or are you saying that

4    there are always (a) and (b)?

5              MR. EICHMANN:  There can just be (a).  It doesn't

6    say whether you have to have a first value.

7              Well, first, let me back up.  What we are construing

8    here specifically is what the resulting location estimate must

9    be dependent upon.  And expressly it can be dependent on just

10   (a), just (b), or both of them.

11             THE COURT:  But do the terms of the patent always

12   give you an (a) or a (b) regardless of whether you use one or

13   both?

14             MR. EICHMANN:  The terms will always give you -- in

15   this particular claim, Claim 1, there will always be first

16   location related information and second location related

17   information.  But when we get to the depended upon part, it

18   says dependent upon a value in the first location related

19   information.

20             So in the case of indeterminate, there is not going

21   to be a value that you are likely to include in that

22   determination.  We have the first location related information

23   that says I am a GPS determiner.  I can't locate this thing.

24   Presumably because he is not within the site of its

25   satellites.  So we don't have a value from there that we are

1   going to be able to use successfully.

2          Then you have a second determiner that can be from

3   cell tower triangulation or cell tower ID, any number of other

4   methods, and we do have a value from there.

5          So in that circumstance we would, in fact, have and

6   must have, first location related and second location related

7   information.  We don't necessarily need these values that can

8   be used to create their resulting location estimate.

9          So this is what they have done.  They have construed

10  "at least one of" to mean this simultaneous phrase.  The claim

11  language clearly does not mean that.  "At least one of" means

12  at least one of.  You can have one or both or just the other.

13  It does not mean simultaneous evaluation and/or combination.

14         They then argue that -- they have this impossible

15  argument -- they say, it would be impossible to choose one

16  location hypothesis over the other without evaluating them

17  both together.

18         First, this is not what the claim says to begin

19  with.  It doesn't say location hypothesis.  It is doesn't say

20  location estimate.  It says first and second location related

21  information.

22         THE COURT:  Let me just ask you, wouldn't

23  defendants' proposed construction of dependent upon a

24  simultaneous evaluation, take care of the case where, you

25  know, your second set of information was meaningless to you,

1  so you just default to the first?

2          MR. EICHMANN:  We have a couple of slides on this in

3  a moment.  But what they have in mind, Your Honor, about the

4  simultaneous evaluation is that you have two things and you

5  are holding them up side by side and looking at them at the

6  same time and comparing the two to each other.  Okay.  It

7  doesn't have to happen like that.  Things can happen in

8  sequence.

9          They can be compared not with each but with

10  something else.  And I will show you an example of that in a

11  moment.  But this is something that their expert admitted to

12  in deposition.  Their brief says you have to choose these

13  things by looking at them together, evaluating them together.

14          Asked their expert, well, does this evaluation that

15  you say is required, does this require comparing both of those

16  two location hypotheses to each other?  He said no.  It could.

17  But it need not.  It is not necessary.

18          So here is an example of why or when you would not

19  have a simultaneous comparison.  You have the first time, time

20  one when you are going to evaluate value (a).  Value (a) in

21  the same example is the mobile station is within 500 meters of

22  the tower at College and Ferguson.

23          Now, if you already know that you have a requirement

24  to report a specific level of precision for the estimate and

25  this is not within it -- let's say your requirement is it has

1    to be within 300 meters, you can look at this at time (a) and

2    say this is not precise enough.  I am going to discard this.

3    I don't need to use this.  What is up next?

4           Let's go to time (b).  Now I am going to look at the

5    value from the second location related information, which in

6    this case is 200 meters of accuracy, which is within our

7    requirement of 300 meters or less.

8           And the system will say, you know what, this is

9    sufficient, this is good enough.  The system has already

10   looked at (a), rejected (a).  It doesn't need to compare (a)

11   to (b).  It just needs to know does this meet my requirement.

12          They also, Your Honor, make various specification

13   arguments.  They refer in their brief to a synergistically and

14   simultaneous -- synergistically and simultaneously using

15   location estimates.

16          Well, first, that term "synergistic" which they

17   couple to "simultaneous," those are different things.  Synergy

18   refers to combining two things and getting something better

19   than what you had before.  It has nothing to do with whether

20   the combination or evaluation is made simultaneously.

21          And on Page 23 of their brief they provide all these

22   different cites they say compels their construction.

23          Two of them used the phrase "the present

24   invention."  If we look at those two instances, they do not

25   require -- they don't even mention simultaneous evaluation or

1   evaluating or comparing together.  They don't say that.

2           There is one cite that uses the term

3   "simultaneously"; just one cite of all of the ones they have

4   cited that uses the actual word they -- to strongly support

5   for their construction.  But this one uses the permissive "may

6   have."

7           We cited the i4i case from the Federal Circuit and

8   many others that it cites as well, that says when you use

9   permissive language like "may" this means that you don't have

10  to have this thing that is described.  You may have

11  simultaneous use of these location hypotheses.  And as a

12  result you may not.

13          The only cite that they provided that also includes

14  this language of evaluated and/or combined, it also uses the

15  permissive "may" and it doesn't say anything about

16  simultaneous processing or evaluating together.

17          So the specification does not support this

18  limitation, and certainly the claim language "at least one of"

19  does not mean or require a simultaneous evaluation or

20  combination.

21          THE COURT:  Response?

22          MR. BELUSKO:  Good morning, Your Honor.  Vince

23  Belusko representing the Cellco group and the carriers here.

24          With respect to this term, I was appreciative of Mr.

25  Eichmann's recognition in his examples that when he was going

1   through (a) and (b), that they were both location estimates.

2   So, indeed, I guess location estimates are what location

3   information means.  That is what he provided.  Otherwise, that

4   example won't work.  So I think we are on the same page there

5   now.

6          With respect to this, there are a number of these

7   phrases.  We are trying to rely -- to give one construction

8   for all of these, and I think that we can go about and do that

9   consistently, and that is what we do here in terms of

10  providing our construction.

11         Now, in terms of that construction, I think that

12  there is a lot of focus on this, at least one thing, and I

13  believe address that specifically.  But, Your Honor, what is

14  really happening in this system -- and I think Your Honor has

15  appreciated this -- is you have a couple of location

16  estimates, and those are occurring.

17         And out of those, you are making an evaluation in

18  real time and you are figuring out what is the best.

19  Sometimes the best is choosing one or the other.  Sometimes

20  the best is the combination of things.

21         And if I could just go forward to 27 for a second

22  here.

23         Our position is that you can have these two; and

24  that what happens is you end up with one which is your

25  resulting location estimate.  That is consistent with the

1    claim, and that is consistent with the very purpose of this

2    patent.  What they are trying to do is add something more,

3    which is that, well, you could do one and then you can do

4    another one later.

5            So under that scenario, Your Honor, I can determine

6    that, well, today I am in Tyler and a year from now I am in

7    Los Angeles; and so whatever I want to give for my resulting

8    location estimate, that still fits in this claim.  That, of

9    course, makes no sense.  That is why --

10           If I can switch to the ELMO here.

11           Just a few of those comments.  The whole purpose of

12   these multiple hypotheses architectures; and that is, again,

13   multiple estimates, location estimates, is to generate

14   something better; the best estimate you can get.

15           But that has to be done at the same time.  Think

16   about this, you are talking about a mobile station, a mobile

17   phone, and you are driving down Interstate 20, you don't take

18   one measurement at 1:00 o'clock and another measurement at

19   2:00 and say voila, now I can get my best estimate of where I

20   am.  You have got to have these things done simultaneously.

21           Let's go back to 18, if we may.

22           So our construction picks up on that language that

23   we just saw with respect to evaluate and/or combine and adds

24   the word "simultaneous" because that is the object here, to

25   get the best estimate in real time.

1           Now, in terms of this, we have got to look at the

2    words around this.  And this emphasis on "at least one" is

3    missing the point.  You have got to look at the context of the

4    claims here and the words around it very specifically.

5           And when we go to our example, Claim 1 from the '231

6    patent, we see that the "at least one of (a) and (b)" language

7    really modifies the terms of where does this resulting

8    location estimate come from?  But it doesn't tell us anything

9    about how this is determined.  And our construction, of

10   course, does that.

11          Now, how do you determine it?  Well, all of the

12   claims follow this.  You get two location estimates, at least

13   two.  And they have to be done through different techniques.

14          And then based on those estimates, you go through a

15   process, a determination process, and the end result of that

16   is a location.  And all the claim says is that it has to be

17   based on at least one of these two constituent locations.

18          So let's talk about how our construction is very

19   consistent with that.

20          We have a first location and a second location and

21   we are combining them, then, obviously, we have used at least

22   one of them.  If we have a first location and a second

23   location and we choose one, well, we are obviously using at

24   least one of them.  So our construction is very consistent

25   with the claim language.  And it tells how that determination

1   is done.

2           Now, in the case of when I am choosing between (a)

3   and (b), it has got to be simultaneous.  Otherwise, I don't

4   have meaningful information that comports with this

5   invention's object.  Even the notion here of some sort of a

6   hybrid thing is pointed out in the title of the patent very

7   consistent throughout.

8           But then we talked about various things.  Sometimes

9   this word "synergy"; yes, that is combination.  Other times

10  the word is "simultaneously."  But all of these things, to be

11  meaningful, to give you the best and most accurate location of

12  where you are, has to be simultaneous; and it has to be at

13  real time the same thing.

14          There is nothing in this patent teaching about I do

15  it on day one here and day 365 there and then I get something

16  that is meaningful.  That isn't done.

17          And in Figure 6 it really talks about this idea.

18  The hypothesis evaluator, the evaluation of where the heck

19  that location estimate is, is a process here.

20          THE COURT:  Let me ask you, Counsel, about your

21  example of doing one today and one 365 days later, and it

22  would give you meaningless information.  Is that a realistic

23  example?

24          MR. BELUSKO:  Well, if it isn't simultaneous where

25  we are using -- think about it.  We are using two techniques.

1    You have got to use two different techniques.  We are getting

2    an estimate (a) and estimate (b), what we are trying to do is

3    get better accuracy.  That is only meaningful if we are doing

4    it at the same time.

5           THE COURT:  Let me hear a response.

6           MR. EICHMANN:  Your Honor, the answer is, no, that

7    is not a realistic example because, first, we are not going to

8    be accusing any system that provides estimates that are a year

9    apart.  There is nothing like that there.  And the time is

10   bounded by the entire scope of the claim which requires a

11   request and requires an output.  There is no system out there

12   that gets the request, gives you one estimate, hold on to it

13   for a year, and then gets another estimate --

14          THE COURT:  Let's shorten the time to an hour.

15          MR. EICHMANN:  An hour, there are embodiments that

16   might purport location like that.  Especially because if you

17   look at one of the terms that Mr. Dovel is going to address

18   "output criteria," one type of output criteria, which means

19   requirement for what is going to be output to the requesting

20   party, is how frequently that location is going to be

21   determined and reported.

22          So an employer, for example, tracking his employees

23   or a bunch of trucks that are out on deliveries, they may or

24   may not want to receive an estimate every one minute; or they

25   might just want to know where the truck is every hour or two

1    hours or so forth.  And that is something that is included.

2              But you raise a good point, Your Honor, which is

3    that if we start getting into this how close in time it needs

4    to be, it becomes very difficult and really just academic to

5    try to say, okay, is it one day?  Does it have to be ten

6    hours?  Eight hours?  One hour?

7              And Dr. Madisetti, their expert, in his

8    deposition -- this is not in the record because it just didn't

9    make the final cut -- I asked him, what you mean by this?  If

10   you can't -- if you need to be at the same time, what

11   constitutes the same time.

12             And he couldn't identify it.  He couldn't explain

13   whether one minute is the same time, within one hour, within

14   one day.  The only thing he could say is not the same time is

15   these 365 days apart thing.

16             But the one point I want to return to, is that

17   Counsel showed the claim language and said there is nothing in

18   here that talks about how the determination is made.  That is

19   exactly our point.  The only thing that the claim specifies

20   about the determination is that it is dependent upon at least

21   one of (a) and (b).  It doesn't say how that determination is

22   made, and it doesn't say that there is any evaluation or

23   combination that must occur or that must occur simultaneously.

24   That is something they are seeking to add into it.

25             THE COURT:  Okay.  Final word on that one.

1          MR. BELUSKO:  Yes, Your Honor.  It is supposed to

2    give you an output of an location estimate.  If it is not

3    simultaneous, then where do you draw the boundary line on the

4    scope of this claim?  It isn't meaningful when you have a

5    mobile station unless you are doing it at the same time.  And

6    this updated position idea is never a resulting location

7    estimate.  That is saying, I tell you you are here today and

8    you are here tomorrow.  That is a separate resulting.

9          And here you are supposed to be taking two location

10   estimates and getting a resulting one.  So that really has to

11   be simultaneous within the scope of this invention.

12         Thank you.

13         THE COURT:  Thank you.  All right.

14         Let's see, next I believe would be Group 6.

15         MR. DOVEL:  Your Honor, this is a group of quite a

16   few phrases.  An example is on the screen now, mobile station

17   location estimating sources.

18         And the issue I want to address, Your Honor, is the

19   attempt of the defendants to import the limitation that the

20   sources that do the determining or the estimating must be a

21   centralized computer and cannot be located in a mobile

22   station.

23         I have placed on the board, Your Honor, the claim

24   language.  Let's start with that.  There is nothing in the

25   words of the claim that mean centralized computer, that carry

1    that meaning, or that mean not located in a mobile station.

2            The specific terms that we are looking at would be

3    words like sources or computational machinery or techniques.

4            But nothing in the claim language would suggest or

5    imply that this must be performed by a centralized computer.

6    It can't be instead performed by distributed architecture or

7    can't be performed by computational machinery that is actually

8    located in a mobile station.  We can't do location estimates

9    there.

10           So for that reason the defendants have got to look

11   elsewhere.  The claim language itself does not require that it

12   be done in a centralized location.

13           So they then turn to the specification, and they

14   point to a single part of the specification.  I have placed it

15   on the board, Your Honor.  And they note that in this portion

16   of the specification the patentee uses the phrase "present

17   invention"; and then they quote from a case that says when a

18   patent thus describes the feature of the present invention as

19   a whole, it is going to describe the scope of the invention.

20           But what the defendants don't address, Your Honor,

21   is the requirement that it must describe the present invention

22   as a whole.

23           By contrast, patents often use the word "present

24   invention" to describe one of the aspects of the present

25   invention, one of the embodiments.  It is not something that

1   is a part of every single claim or every single embodiment.

2          For example, in this Federal Circuit case, they

3   state that the present invention is not limiting where the

4   references to a certain limitation as being the invention are

5   not uniform or where other portions of the intrinsic evidence

6   do not support applying it to the entire patent.  That is just

7   the case here, Your Honor.

8          First of all, the portion they cite itself says --

9   they are talking about a specific wireless network where we

10  are going to add this location center.  It appears on Column

11  24 of 140 columns, this description of the location center in

12  this embodiment.

13         There are a lot of other embodiments in the patent,

14  Your Honor.  I am going to talk about two of them.

15         I am going to start with Figure 4.  There is the

16  location center depicted on Figure 4.  That is where they say

17  all of the location estimating has to happen.

18         But the patent also says that the present

19  invention -- and uses the words "presentation invention" to

20  describe embodiments where the location estimating is done on

21  the mobile station itself, MS 140, which I have got depicted

22  on the screen.  That is an embodiment called a mobile location

23  unit.

24         They also, and the patent talks about an embodiment

25  called a mobile base station that has estimators,

1  computational machinery that does estimating.  That is

2  something called the mobile base station.

3          So let's start with the mobile location unit.  I am

4  going to show Your Honor the portions of the specification

5  that talk about that.

6          It is introduced in Column 99.  It starts out with

7  this introduction:  Any collection of mobile electronics

8  denoted mobile location unit, that is able to both estimate a

9  location of a target mobile station and communicate with the

10  base station, may be utilized by the present invention.

11          So here we have an embodiment called the mobile

12  location unit that has mobile electronics.  For example, it

13  could be an integrated circuit.  They can estimate a

14  location.  This is identified as being part of the present

15  invention.  Again, this is something you can actually estimate

16  the location of a mobile station.

17          It goes on to describe those embodiments in more

18  detail.  It says:  There are a number of embodiments

19  contemplated by the present invention for such a mobile

20  location unit.  For example, in a minimal version, the

21  electronics of this mobile location unit may be a little more

22  than an onboard MS 140.  That is mobile station 140.  The

23  mobile stations we are trying to locate here.

24          Together with locational electronics -- in this case

25  it is going to be sector directional antenna and a

1    controller.  So this minimal unit would consist of the mobile

2    station plus some location electronics.

3            And just to be clear about that, Your Honor, even

4    when defining mobile station, the patent points out that it is

5    going to use the term "location unit" sometimes

6    interchangeably with mobile station; that these terms may be

7    considered synonymous; that location unit is a synonym for

8    mobile station.

9            It goes on to describe other mobile location unit

10   embodiments back over in Column 99.  In an enhanced version of

11   a mobile location unit, a GPS receiver may also be

12   incorporated so that the location of the mobile location unit

13   may be determined, and consequently a location of a target

14   mobile station may also be determined.

15           So now we have our -- the MS 140, our mobile station

16   with the GPS receiver, and the patent describes this

17   embodiment as one that can actually locate a mobile unit.  It

18   has the mobile estimating equipment, the hardware, software

19   necessary right there to provide an estimate.

20           And the patent emphasizes that such mobile location

21   units may be sufficient for many situations; and, in fact, the

22   present invention contemplates their use.

23           So, Your Honor, to return to our question, which is,

24   does the patent uniformly say that the present invention

25   requires that estimators must be in a centralized computer?

1  No, it doesn't do that.  It specifically says their

2  embodiments for the present inventions contemplates a mobile

3  location unit that can locate mobile stations, and that is not

4  in a centralized computer.

5          Another embodiment is the mobile base station.  I

6  will just quickly hit this, Your Honor.  Again, it says this

7  is part of the present invention.  It includes a mobile

8  location unit that is also a scaled-down version of a base

9  station.

10          So we take our mobile location unit we had before

11  and we add to it some more components, base station

12  components, and now we have something called a mobile base

13  station.  That is depicted as Item 148.  And it is a picture

14  of a -- it is a vehicle version of it.

15          And the patent explicitly states that this mobile

16  base station can estimate the location of a target mobile

17  station.  This is not an estimated.  It is in a centralized

18  computer.  In this case it is part of a vehicle.

19          THE COURT:  Okay.  Thank you.

20          Response?

21          MR. KENNERLY:  Thank you, Your Honor.  As Counsel

22  pointed out, the real dispute here is whether the claimed

23  computational machinery can be located anywhere, including in

24  the mobile station to be located, or must be located somewhere

25  else.

1          We say centralized, essentially, because the patent

2    talks about a location center.  It uses that type of

3    terminology.  What we mean by that is that this computational

4    machinery is not on the mobile station to be located.  It is

5    in the network.  It is centralized with respect to the mobile

6    stations that are to be located, and that is the fundamental

7    dispute.

8          THE COURT:  What do you say about the two mobile

9    embodiments he just had up?

10          MR. KENNERLY:  I have the patent itself, Your

11    Honor, anticipating that question.

12          This is a portion of the specification that Counsel

13    was citing to, and you will see the heading is mobile base

14    station location subsystem description.  And it does talk

15    about a collection of mobile electronics called this mobile

16    location unit, that is able to estimate a location of a target

17    mobile station 140.

18          These electronics are somewhere else than the mobile

19    station to be located.  They may move around the network, but

20    they are not on the mobile station to be located.  And,

21    perhaps, in our construction that could be more clear.

22          In particular, Skyhook states affirmatively that the

23    computational machinery is not in the mobile station.

24          THE COURT:  So you are saying a target mobile

25    station cannot be the mobile base station itself?

1           MR. KENNERLY:  Exactly.  Now, the portable unit we
2    are talking about, could have electronics to help locate the
3    target mobile station, that is, the one that you want to
4    locate.  And what this goes on to describe is this mobile unit
5    locating itself and reporting its own location to the location
6    center which then, perhaps based on multiple of those reports,
7    then determines the location of the actual mobile station that
8    is being located.  There is no description of the mobile
9    station to be located, locating itself with its own
10   computational machinery.
11          THE COURT:  Let me just hear a brief response to
12   that point, Mr. Dovel.
13          MR. DOVEL:  Yes, Your Honor.  The very portion that
14   I had up there before Your Honor explained that the mobile
15   location unit has the electronics to locate itself so that --
16   for example, go to the first one.
17          THE COURT:  Change the screen over, if you would,
18   Ms. Ferguson.
19          (Screen changed.)
20          THE COURT:  There you go.
21          MR. DOVEL:  The mobile location unit is simply
22   defined as the electronics that is able to estimate a location
23   of a target mobile station 140.  So it has the electronics
24   within it to actually do the estimating.
25          And additionally in Column 99 and 100 -- I will show

1   Your Honor that in a second, it explains that the mobile base

2   station has to be able to work autonomously when it is not in

3   communication with any network.  It has to be able to work

4   autonomously to be able to identify, estimate a location.

5          Finally, Your Honor, with respect to actually being

6   the target mobile station, MS 140 is our target mobile

7   station.  It says that the mobile location unit may be little

8   more than an onboard MS 140.  That is a target mobile station.

9   That is what we are trying to locate.  MS 140 is always

10  identified as the target of what we are trying to locate.

11          THE COURT:  All right.  Let me hear a response to

12  that.

13          MR. KENNERLY:  Yes, Your Honor.  I actually had this

14  highlighted before.  You will see the second highlight on this

15  Column 99 of the '231 patent.  Thus, the onboard mobile

16  station -- that is the one Counsel is talking about -- is used

17  to communicate with the location center and possibly the

18  target mobile station 140.

19          So, again, this mobile location unit that may have

20  computational machinery on it, is something separate and apart

21  from the mobile station that is being located.  This

22  computational machinery is in the location center.  It may be

23  in whole or in part in some other mobile unit, but it is

24  definitely not on the mobile station that is being located.

25  There is no embodiment that describes that.

1        THE COURT:  All right.  Response to that, Mr. Dovel?

2        MR. DOVEL:  Yes, Your Honor.  The next sentence

3 there in the specification we talked about the enhanced

4 version of the mobile location unit, and we have a GPS

5 receiver so that the location of the mobile location unit may

6 be determined.  So we are locating the mobile location unit

7 itself, which is an MS 140; and, consequently, an estimate of

8 the location of the target MS may also be determined.

9        The GPS receiver is described in greater detail in

10 other portions of the specification.  It makes clear that the

11 GPS receiver is used to estimate, actually come up with the

12 determination of the estimate of the object where it is

13 located.  And that is going to be our MS 140.

14        THE COURT:  All right.  You may proceed, Counsel.

15 Respond to that if you wish.

16        MR. KENNERLY:  I would like to respond, Your Honor.

17 And, again, this is talking the same thing I just mentioned.

18 This is an enhanced version of the mobile location unit which

19 is this thing not on the target mobile station that may

20 include the computational machinery to help locate the target

21 mobile station.

22        In an enhanced version of that mobile location unit,

23 which is not the target mobile station, it can have a GPS

24 receiver rather than some other type of location equipment.

25        Nothing about that is saying that that equipment is

1   in the mobile station to be located.  This is all outside of

2   that target mobile station.

3              THE COURT:  Okay.  Thank you.  Go ahead.

4              MR. KENNERLY:  So that is the dispute, Your Honor.

5   I will just point to a few things in particular.  Claim

6   language, we start there.  This is Claim 1 of the '231

7   patent.

8              And the claim states:  For each of the mobile

9   stations M, perform the following steps by computational

10  machinery.

11             This is computational machinery that is not in those

12  mobile stations to be located; otherwise, it could not perform

13  these steps for each of the mobile stations.

14             This is right in the claim language.  This is Column

15  7 -- 171 beginning at Line 4 of the '231 patent.  Clearly in

16  the claim language itself differentiating the mobile stations

17  that are to be located from the computational machinery that

18  does the locating.  That is right out of the claim language,

19  and that emphasizes the point that we just discussed.

20             Of course, the patent describes the location center

21  as actually doing this.  This is a figure also from

22  plaintiff's slide presentation.

23             THE COURT:  So you are now sort of expanding this

24  argument to say that computational machinery cannot be in the

25  mobile device, which kind of gets into Group 3, right?

1           MR. KENNERLY:  Of the location techniques?

2           THE COURT:  Yes.

3           MR. KENNERLY:  We point to intrinsic evidence that

4  makes clear that the location techniques are not on the mobile

5  station to be located.  That argument goes with this Group 6

6  argument.  But, basically, the bottom line, this dispute boils

7  down to whether the location techniques, this computational

8  machinery, can be on the mobile stations that are being

9  located or must be somewhere else.  And that dispute goes

10  through these Group 3 and 6 terms and it is the same.  That

11  has to be not on the mobile stations to be located.

12           THE COURT:  Response to that.

13           MR. DOVEL:  Your Honor, the point that was made was

14  that Claim 1, the claim language which I put on the board,

15  compels their construction because it says for each of the

16  mobile stations perform the following by computational

17  machinery.  It was the first two lines that you were showed by

18  defendants.

19           But that computational machinery is not the

20  computational machinery that is doing the location estimating.

21  That computation machinery:  Receives first and second

22  location related information from -- and for this claim -- it

23  is what follows after that "from" that is doing the

24  estimating.  Computational machinery performing first and

25  second mobile station location estimation determiners.

1          There is nothing in that phrase that says that has
2     to be done in a centralized computer; that we can't have one
3     of those location station estimation determiners on a mobile
4     station that is providing this GPS input.  There is nothing
5     about that claim language that precludes that.
6          We could have it all distributed.  Nothing about the
7     claim language itself says it has to be on there.  It is not
8     part of the claim at all.  That is why they have to turn to
9     the specification to find a definition or a disclaimer.  They
10    are not going to find one in there.  There are multiple
11    embodiments.
12             THE COURT:  Final word, and then we will move on.
13             MR. KENNERLY:  If you can leave that slide up,
14    please.
15             The term to be construed actually is not just
16    computational machinery, but it is in fact this computational
17    machinery that performs these mobile station location
18    estimations.  And, as we have discussed, that is never on the
19    mobile station to be located.
20             There is no reason to think that this computational
21    machinery is different than the one that supposedly does these
22    steps for each of the mobile stations and, therefore, can't be
23    on those mobile stations.
24             But, again, the computational machinery in
25    particular for doing the mobile station location estimation,

1   the computational machinery that has those determiners cannot

2   be on the mobile stations themselves that are to be located.

3          I just want to point out one other thing, Your

4   Honor, which is we shouldn't get hung up on computer equipment

5   versus computers or other hardware.  Defendants' construction

6   is not trying to limit this to a single computer or to exclude

7   routers or switches or any other type of hardware devices.

8          THE COURT:  So you would at least accept plaintiff's

9   parenthetical "such as a computer or hardware device"?

10          MR. KENNERLY:  Yes, Your Honor.  Yes, Your Honor.

11   The dispute is whether that can be located on the mobile

12   station that is itself to be located or must be somewhere else

13   in the network.

14          THE COURT:  All right.  Okay.  Thank you.

15          All right.  What is next?

16          MR. DOVEL:  Your Honor, I believe we are now going

17   to Group 8, which is actually just one phrase.  It is a phrase

18   consisting of two words "output criteria."

19          The defendants have two separate constructions they

20   have proposed.  Both of them have limitations that narrow the

21   ordinary meaning of output criteria.

22          The best place to start, Your Honor, is to put this

23   in context.  What is output criteria used for?  And how is it

24   used in the claim?  I have got Claim 27 of the '434 on the

25   screen.

1            What we are going to do is we are going to determine

2    output location data.  That is the thing we are finally going

3    to output and send to our destination.  And we are going to do

4    it according to output criteria.  So output criteria in the

5    claims is used in connection with the final output we are

6    going to send to the destination.

7            There are a number of dependent claims that

8    specifically define types of output criteria.  Claim 61 of

9    '434 I have put on the board.  It is probably the most

10   comprehensive dependent claim.  It has a list of six different

11   types, so it is very useful.

12           If we compare, for example, AT&T's construction,

13   their proposal, to those specified types of output criteria in

14   the dependent claim, we will see that their construction

15   cannot be proper.

16           It is clear, Your Honor, that "output criteria,"

17   however it is defined, has to at least cover what is

18   specifically and expressly identified in the claims.

19           One of the times of output criteria is a

20   transmission protocol; that is, what transmission protocol are

21   we going to use to transmit it to the destination.

22           AT&T's proposal says that the criteria is just used

23   to generate a representation of an identified location.  It is

24   true output criteria would include those that are used to

25   generate a representation of an identified location.  But it

1   includes other forms of output criteria, such as a

2   transmission protocol.

3          Another example would be a frequency with which

4   repeated location estimates of the mobile station are to be

5   output to an application.

6          This is not something that is clearly within the

7   scope of something used to generate a representation.  It

8   tells us how often we are going to do it.

9          The third example is destination data for

10  determining where we are going to send the resulting output.

11  Destination data wouldn't be criteria used to generate a

12  representation.

13         THE COURT:  What is AT&T's response to that; that

14  your definition doesn't cover all of the claims?

15         MR. KENNERLY:  I was just checking, Your Honor, but

16  I believe that Claim 60, which was just discussed, may not be

17  one of the asserted claims.  I know that the way this term is

18  used in the actual claim itself.

19         THE COURT:  Would it make any difference whether it

20  is an asserted claim or not, for the purposes of claim

21  construction?

22         MR. KENNERLY:  It may not.  And certainly we would

23  want to focus on the asserted claims, but I understand that

24  other claims are certainly relevant.

25         AT&T's construction falls right out of the claims of

1    the patents that are at issue, at least that are asserted.

2              Claim 27 of the '484 patent describes the process.

3    You obtain location information for a mobile station, and then

4    you apply the output criteria to that location information and

5    determine output location data, including a representation

6    identifying a location of the mobile station.

7              And all AT&T's construction does is take this

8    ambiguous term that is unclear, that wouldn't be understood by

9    a jury, and link that to the surrounding claim language.

10             AT&T's construction is that that criteria is used to

11   generate a representation of an identified location.

12             And looking at the claim, that is exactly what is

13   claimed in the claim, and that is highlighted down in the

14   second box.  So it is merely bridging the gap between the

15   surrounding parts of the claims.  Otherwise, "output criteria"

16   is sitting there.  It is unclear what it means.

17             THE COURT:  All right.  Thank you.  What about

18   Cellco, do you wish to weigh in?

19             MR. BELUSKO:  Yes, Your Honor.  With respect to

20   output criteria, I don't think it is appropriate to go look at

21   dependent claims added after the application was filed to

22   inform what the claim means in the first place.

23             Your Honor, as filed, the only thing that is in the

24   specification is the output criteria term that we have put in

25   our construction, the output underscored criteria which is

1   defined in the specification.

2          Here what has happened is the independent claim

3   adding this term, as well as dependent claims adding this

4   term, come about years later; and now they are saying, well,

5   we are going to define it later.  Well, that is broadening

6   after.

7          You can't use prosecution history.  You can't use

8   claims later to broaden the scope of the invention.  So the --

9   they effectively excluded the very thing that it should be,

10  which is the output criteria that we define in connection with

11  the -- you know, this log of errors.  That is what it is

12  supposed to be to be consistent with the specification.  All

13  of this other stuff is made up many years later.

14         THE COURT:  Okay.  Thank you.

15         Response?

16         MR. DOVEL:  Yes, Your Honor.  That is a written

17  description argument.  Each of these elements that are in

18  these -- identified in the dependent claims are specifically

19  described in the written description in great detail.  There

20  is a lot of discussion about how to do the granularity, how to

21  do the frequency.

22         The specification doesn't have to use the phrase

23  "output criteria" to encompass them at all.  That is something

24  that can -- added as part of the development of the claim.

25  There is no requirement that we use the exact words that are

1    in the specification.  You have to describe the concepts that

2    are in the specification.

3            And the specification, there is no doubt about it,

4    identify each one of these.  If they want to bring a written

5    description invalidity challenge, they certainly can; but it

6    would fail.

7            THE COURT:  Let me ask you this, Mr. Dovel:  Your

8    proposed construction with the "such as," seems to me that it

9    might be a little wordy and confusing on the jury.

10           What would you think of this proposed construction:

11   Data specifying one or more required attributes of the output

12   location data?

13           MR. DOVEL:  That's fine.

14           THE COURT:  What about AT&T?

15           MR. KENNERLY:  Your Honor, very quickly -- and I

16   have a slide on this.  This is a dispute from AT&T's

17   perspective; that the "output criteria," as properly

18   construed, must be applied to an identified location.

19           Plaintiff wants it to be applied in the process

20   somewhere of determining that location.  So, again, this

21   representation of an identified location, that comes right out

22   of the claims, is important.  That is the dispute, whether it

23   is after or before.  Data specifying attributes, those sort of

24   things really aren't the dispute --

25           THE COURT:  You are wanting it tied to the

1    identified location?

2              MR. KENNERLY:  Excuse me?

3              THE COURT:  You are wanting it tied to the

4    identified location?

5              MR. KENNERLY:  And that is what the claim says.  The

6    claim says apply the output criteria to the location

7    information and then determine output location data, including

8    a representation identifying a location.

9              THE COURT:  Okay.  Response?

10             MR. DOVEL:  Your Honor, what the claim says is that

11   we are going to have output location data that is going to be

12   derived at by using this output criteria.

13             But the output location data does not consist of

14   just the identified location.  It must include that.  The

15   claim language is output location data including a

16   representation.  But it could be other things that are output.

17             For example, there could be time data that is

18   output.  There could be data about the reliability of this

19   particular location estimate.  And among the output criteria

20   that are expressly identified in the claims, are the

21   transmission protocol or the destination where it is going to

22   go.

23             And the transmission protocol and destination are

24   not items that are necessarily needed to generate our

25   estimate.  But once we have a generated estimate, there are

1    items that may be used to determine what is our output going

2    to look like?  What transmission protocol are we going to use?

3    What address form are we going to use?  How often are we going

4    to send this thing?  The various things that are identified in

5    the specification and then covered in the dependent claims.

6              THE COURT:  All right.  What is next --

7              MR. BELUSKO:  Your Honor, may I have just one --

8              THE COURT:  Yes.

9              MR. BELUSKO:  Thank you.

10             If you could bring up 49 quickly.

11             Okay.  Your Honor, as we pointed out, "output

12   criteria" is defined in the patent.  It is the only -- in both

13   patents.

14             And if I could go to 53, if you were to do anything

15   with that definition, it would have to include -- the

16   outputting of a record of errors must be included in the

17   construction.  If you are then going to go, include this

18   litany of these other things, it should at a minimum say you

19   always have got to have the outputting of a record of errors.

20   That would at least make it somewhat consistent with the

21   specification.

22             THE COURT:  Go back to that definition.

23             MR. BELUSKO:  Yeah, 49.

24             THE COURT:  Now, is that talking about what the

25   output criteria is, or how the output criteria is used?

1          MR. BELUSKO:  I think that is defining what it is,

2     Your Honor, as this output --

3          THE COURT:  All right.  Plaintiff's response to

4     that?

5          MR. DOVEL:  I'll try to make this as brief as

6     possible, Your Honor.  I will give you the one-sentence

7     version, which is, this portion of the specification that they

8     identify is not talking about output criteria that is used to

9     output our final output for the destination.  This is a

10    parameter that is used in a particular function in a

11    particular program for a particular technique.

12         So to explain that, Your Honor -- and that is why it

13    says output_criteria.  The underscore -- it is not output

14    criteria used in the ordinary meaning.  It is an actually

15    defined parameter in a computer program.

16         So we have techniques, programs, functions,

17    parameters.  One of the techniques that the patent talks

18    about, only one of them is signal pattern matching.  Within

19    signal pattern matching, you have got an embodiment.  There

20    are seven programs that are used to put that together.  One of

21    those is location signature comparison program.

22         One of the functions for that program is something

23    called determine_location_signature_fit_errors.  That function

24    is used to update a database to tell us whether our signatures

25    that we are using are erroneous; whether they need to be

1    changed out or not.

2            One of the parameters for that function is

3    output_criteria.  That is what they are trying to import.

4    This has nothing to do with output criteria for the final

5    location.

6            If we were going to import this, we would have to

7    import the criteria used in determining the error records to

8    output in error_rec_bag, which can be these two possible

9    criteria.  All error records or only some of them.  That is

10   not at all the context of where "output criteria" is used in

11   the claim.

12           THE COURT:  Thank you.

13           Anything further on that?

14           MR. BELUSKO:  Your Honor, I would just point out

15   that that function of the output criteria -- output_criteria

16   is the core of the whole process here of figuring out whether

17   if you take these estimates and you compare them.  That is why

18   it is so important.  Confidence factors, for example.  You

19   need to know your errors in order to evaluate one estimate

20   versus another so it is not something down in the weeds.  It

21   is core to everything that is being done in this patent.

22           Thank you.

23           THE COURT:  Thank you.

24           All right.  Next I think would be Group 11; is that

25   correct?  "Wherein said one or more location determining

1    sources" --

2              MR. EICHMANN:  Yes, sir.

3              THE COURT:  -- "perform the following techniques."

4              MR. EICHMANN:  This phrase is found in Claim 10 of

5    the '231 patent; and before I turn to the claim language,

6    let's look briefly at the parties' constructions.

7              The key part in dispute is what is highlighted here

8    in yellow.  Under TracBeam's construction, if you have a

9    combination of location determining sources that collectively

10   perform both techniques, then this construction is met.

11             Under Cellco's construction if you have location

12   determining sources and each and every one of those perform

13   both techniques, that is what is required.  And then AT&T

14   asserts there must be at least one location determining source

15   that is capable of performing both techniques.

16             So this is where the claim language comes from.  In

17   Claim 10 of the '231 patent the language we are construing is

18   at the very top here in highlight; and says, "wherein said one

19   or more location determining sources perform the following

20   techniques (i) and (ii).  And then further below is a first

21   technique that is described and then a second technique.

22             The claim language expressly says that there can be

23   one or more location determining sources.  So we are going to

24   walk through an example of what would happen under our

25   construction, TracBeam's construction, if we have just one of

1    these sources.

2             If you had one, that one source would have to

3    perform a first technique and a second technique.  That is

4    what the claim language requires.  This is depicted here, that

5    first source -- that one source is source (a) at the bottom

6    left.

7             If we then say, okay, let's assume we have two

8    location determining sources, provide an example of what that

9    might look like or what our construction includes, you may

10   have source (a) and source (b), and source (a) may perform

11   just the first technique and source (b) just the second

12   technique.

13            In this scenario you have two location determining

14   sources, and those sources perform the following techniques.

15   The combination of those sources collectively performs both

16   techniques.  That is what our construction encompasses and

17   what they seek to preclude.

18            So let's look first at what Cellco proposes.  And

19   it is really, Your Honor, only this two source -- two or more

20   source example that is in dispute because the parties are in

21   agreement that if there is just one source, that one source

22   has to perform both.  So this is what is really in dispute,

23   two sources or more.

24            THE COURT:  Let me clarify for the record.  Are both

25   parties in agreement with that statement?

1          MR. KENNERLY:  Yes, Your Honor, when there is one

2     source, we all agree it has to perform both techniques.

3          THE COURT:  All right.  Okay.

4          MR. EICHMANN:  So this is what we are talking about.

5     We have two sources or maybe more, but we will stick with two

6     for this example.  In this circumstance Cellco says that each

7     one of these, both source (a) and source (b), have to perform

8     both the first technique and the second technique.  That is

9     their construction.

10          This is where they get it from, each perform both of

11     them.  That rewrites the actual claim language.  The claim

12     language does not include the word "each" or "both of."  And

13     this is where they insert it, right in front and behind

14     "perform."

15          AT&T has its own variation on this, and they say

16     that at least one of these sources, if we have two or more,

17     has to be capable of performing both techniques.  So under

18     AT&T's construction you could have source (a) that performs

19     just the first technique; that is fine with them.  But if you

20     have source (b) -- I may have messed up a little with the

21     animation here.

22          But if you have a second source, it has to perform

23     both the first and the second technique.  And this is how they

24     rewrite the claim language.  They take out the "said one or

25     more" and replace it with "at least one of said."  And they

1    take out this language "perform the" with -- and replace it

2    with "is capable of performing both."

3           Now, to justify this -- they argue in their brief at

4    Page 26 -- that unless one of the sources, one of the location

5    determining sources, is at least capable of performing both

6    techniques, it would be impossible for both techniques to be

7    performed if there is just one location determining source.

8           That is true.  And that is why all parties agree

9    that if there is a one -- in the one source example, if there

10   is just one location source -- excuse me, determining source,

11   it must perform both.  But that argument, that undisputed

12   proposition, that says nothing about this second source

13   example.

14          It says only -- it talks only about the one source

15   example and says nothing that would preclude our construction,

16   our example that allows for there to be two sources; one that

17   performs a first technique, another that performs a second;

18   and together those sources perform the two techniques.

19          They also point to the specification.  This is Page

20   27 of their brief.  And they have four cites here.  The first

21   two are highlighted because they are very similar.  They cite

22   the specification that states multiple wireless location

23   techniques, or FOMs, are provided for MS location.

24          And then further below they say that various

25   embodiments can utilize a plurality of wireless location

1    estimators based on different wireless location techniques.

2            First, Your Honor, as they expressly note here,

3    these are descriptions of embodiments in the specification.

4    But more than that, these particular examples they say only

5    that you have plural sources and plural determining --  excuse

6    me, techniques.  It doesn't say anything about each individual

7    one of those sources needing to perform multiple techniques.

8            The next -- excuse me, the next two cites they have

9    are also very similar.  And these are ones that we cite in

10   support of our position because they state that various

11   location estimators, which in some respects is used

12   interchangably with determiners, various location estimators

13   utilize one or more of the following location techniques.

14           Similarly, this states that a plurality of location

15   hypothesis generating modules similar slightly corresponding

16   embodiment, correspond to one or more FOMs.  FOMs are

17   generally based on location techniques.

18           So what this says expressly is that each one of

19   these things can be based on one or more.  They can use one or

20   more.  This is the opposite of what they are arguing.  It is

21   exactly what we are arguing.

22           THE COURT:  All right.  Response.

23           MR. KENNERLY:  Your Honor, here are the

24   constructions.  First of all, as we stated, there is no

25   dispute that when there is only one source, it must do both

1  techniques.  And the dispute is really about whether when

2  there are multiple sources that none of them has to be able to

3  perform both techniques, which is what TracBeam says.

4          If you look at the claim language on the left, it is

5  ambiguous; but the most straight-forward reading of it, we

6  think, is that at least one of those sources has to perform

7  the following techniques (i) and (ii).  It doesn't (i) or

8  (ii).  Plainly, both have to be performed.  And it says one or

9  more location determining sources.

10          We think a very straight-forward reading of that is

11  that at least one of them, if not all, need to be capable of

12  doing both.

13          Cellco's construction is that each of them, that is

14  all, need to be capable or need to do that; and we are fine

15  with that but at least one needs to do it; and that is the way

16  the claim can be read.

17          Now, we have heard about injecting language into

18  these claims.  I think I heard plaintiff's Counsel talking

19  about the "each" and complaining about the addition of that

20  word into Cellco's construction.

21          I see that in plaintiff's construction.  Plaintiff

22  apparently agrees at least with the inclusion of that word in

23  the construction.  And plaintiff inserts several things into

24  this claim that aren't there; "one or both" plaintiff inserts.

25  Plaintiff inserts this combination in the claim that isn't

1   there.  Plaintiff inserts "collectively" in the claim that

2   isn't there.

3           There are a number of things that the plaintiff has

4   injected into this to try to foreclose the constructions that

5   both AT&T and Cellco are offering, which are much more

6   straightforward, easy to understand and resolve this ambiguous

7   claim language in a way that is straightforward.

8           We all agree if there is one source, it has to be

9   both techniques.  And no matter how many sources you add, we

10  think at least one, if not all, need to be capable of

11  performing both techniques.  And the plaintiff, as you can see

12  from its construction, goes to great lengths to avoid that

13  conclusion.

14          The constructions themselves from AT&T and Cellco

15  are quite simple; and as you can see on the right, plaintiff's

16  construction is nearly twice as long and, frankly, is

17  confusing.

18          THE COURT:  Okay.  Thank you.

19          All right.  Let's see.  What would be next?  Group

20  12.

21          MR. EICHMANN:  Yes, Your Honor.  Group 12, and this

22  includes a phrase that begins with "corresponding input

23  data."

24          TracBeam proposes that there is no construction

25  necessary for this entire phrase.  The defendants propose the

1    construction on the right here, and we will show you how it

2    differs from the actual claim language.  And this claim

3    language is from Claim 1 of the '231 patent.

4             In the actual claim language, the term "input data"

5    is used.  In defendants' construction they replace that with

6    the phrase "wireless signal characteristics."  That is the

7    first error with their construction because input data simply

8    does not mean wireless signal characteristics.  The words on

9    the left, the actual claim language does not mean that.  Input

10   data may include various types of data.  It is not limited to

11   wireless signal characteristics.

12            In support of their interpretation, their narrowing

13   interpretation of input data, defendants say, well, plaintiff

14   doesn't derive any examples of what this input data could

15   possibly be.

16            First of all, Your Honor, we are not required to

17   provide examples of all the different ranges of what the input

18   data could be.  The patent may disclose certain embodiments

19   and still claim a broader scope than those particular

20   embodiments.

21            But more than that, the specification does, in fact,

22   disclose various types of input data that are not wireless

23   signal characteristics, at least as defendants seem to mean

24   that term.

25            For example, in the '231 patent at Column 2, there

1    is a reference to GPS signals that are transmitted to a

2    central data center for performing location calculations.

3    Those GPS signals are -- this embodiment is one of the

4    different GPS-related techniques that the specification says

5    can be employed.

6             So in this embodiment, the signals being transmitted

7    here are not wireless signal characteristics, but they are

8    certainly input data.

9             In addition, at Column 25 there is a reference to an

10   identification of each base station or sector identification

11   information.  So base station ID or a sector ID within a base

12   station, that is also input data that can be transmitted back

13   to something or used by something that is computing locations

14   and that does not constitute wireless signal characteristics.

15            The second thing that defendants do with the claim

16   language in their construction is they take this phrase

17   "obtained by transmissions" and they replace it with

18   "transmitted."

19            "Obtained by transmissions" is a phrase, and it is

20   used purposely in this invention instead of the phrase

21   "transmitted."  Those are not equivalents.  That phrase does

22   not mean that word "transmitted."

23            To support this, the defendants argue that it is

24   ambiguous whether these wireless signal measurements are

25   obtained by either of these two options (a) and (b) that they

1    identify here.

2            And the examples that they give are (a) transmitting

3    the actual wireless signal measurements; or (b) measuring the

4    characteristics of wireless signals transmitted between the

5    mobile station and communication stations.

6            Well, first, this relies upon their improper

7    construction of "input data."  They assume that wireless

8    signal measurement is correct for this to work.

9            But more than that -- this is something we see in a

10   lot of their constructions, including in the last set of

11   constructions we just discussed.  They identify something as

12   ambiguous when it really is not ambiguous.  What they mean is

13   that, well, this claim language could encompass multiple

14   circumstances; and, therefore, it is ambiguous, so, Your

15   Honor, we want you to pick one of the circumstances and limit

16   it to that.  That is not what ambiguity is.  That is a claim

17   that describes a scope that includes different scenarios, and

18   it is improper to narrow that scope.

19           And so here they expressly admit that the phrase

20   "obtained by transmissions" actually includes (a) and (b) in

21   their examples.

22           They then say, well, Your Honor, we have to limit

23   this phrase to just (a) because the claim language confirms

24   that interpretation (a) is the correct one.  They argue that

25   Claim 1 only makes sense with an interpretation that includes

1    wireless -- excuse me, satellite signal measurements within

2    the scope of the claimed wireless signal measurements.

3            Again, this is not an argument about resolving

4    ambiguities, about narrowing the existing scope of the claim.

5    And, furthermore, the logic of this argument does not follow.

6            Their argument says that if you have input data and

7    it relates to satellites, well, then the way that is obtained

8    by transmissions, it has to be this option (a) transmitting

9    the actual wireless signal measurements from one place to

10   another.

11           That is fine; but what if it is not satellite

12   signals?  What if we have terrestrial signals from a network

13   base system, for example?  If that is the input data, it is

14   terrestrial input data, that can be transmitted -- or excuse

15   me, that can be obtained by measuring the characteristics of

16   the wireless signals.

17           So just briefly to sum up this one.  This is a --

18   this circle here represents the different ways in which the

19   transmissions may be obtained, and it applies to various

20   different scenarios based on whether they are satellite

21   signals or terrestrial signals; and there are different types

22   of obtaining by transmissions.  The Court should not limit it

23   to just one.

24           THE COURT:  All right.  Response.

25           MR. KENNERLY:  Your Honor, this phrase is indeed

1    ambiguous in a couple of senses.  One is what the input data

2    means.  And we think it is not just input data.  In fact, the

3    claim -- the claim is corresponding input data obtained using

4    wireless signal measurements.

5            Now, we don't believe that the average juror would

6    understand what input data obtained using wireless signal

7    measurements is.  We have attempted to give that some

8    clarification.  Wireless signal characteristics seems to be

9    about the broadest way to describe some type of input data

10   that could be obtained using wireless signal measurements.

11           THE COURT:  What about the satellite example?

12           MR. KENNERLY:  Okay.  The satellite example

13   really -- and if you look at the claim language, this shows

14   that.

15           In a nutshell, the phrase "obtained by

16   transmissions" does not include both of those

17   interpretations.  It is unclear what it includes.  That is why

18   we need a construction.

19           Obtained by transmissions between the mobile station

20   and the communication station.  If that addresses the

21   characteristics of the signals transmitted between the mobile

22   station and the communication stations, that is all on the

23   earth.  Those are only earth-based terrestrial transmissions.

24   So that would exclude coverage of satellite embodiments where

25   the transmission is being measured -- those characteristics

1   are coming from communications between satellites and the

2   mobile stations.

3           That is why the second possible interpretation

4   doesn't make sense because if you are just measuring the

5   transmissions between the mobile station and the communication

6   station, you are limiting this to something on the ground.

7   And that excludes the satellite embodiments.

8           THE COURT:  All right.  Response to that.

9           MR. EICHMANN:  Your Honor, again, it is not us that

10  affirmatively stated that these are two examples of how you

11  can obtain the signals by transmissions.  This is from them in

12  their brief.  We didn't seek a construction for this.  So they

13  have said that these wireless signal measurements may be

14  obtained by one of these two things.

15          They have identified these as two options of how

16  that language may apply.  They seek to limit it solely because

17  they say, well, the satellite signals, if they are satellite

18  signals, has to be this first option.

19          But, again, they have no response for what if they

20  are terrestrial signals?  Why can that -- in that circumstance

21  why does it have to be only option (a) under obtained by

22  transmissions and not option (b).

23          And with respect to jury comprehension, I would

24  argue that input data is certainly more understandable to a

25  jury than wireless signal characteristics, especially when

1  very similar language is already following it in the rest of

2  that claim, such that they have wireless signal

3  characteristics obtained by measurements of wireless signal

4  characteristics.  That is much more difficult to comprehend.

5            THE COURT:  Final word.

6            MR. KENNERLY:  Your Honor, I would just add, on the

7  last point about the satellite transmissions, that I think it

8  is a mischaracterization to say that we think this language

9  applies to both of these scenarios.  It is unclear what it

10  means.

11            There are two possible interpretations in the

12  abstract, and we have shown why one of them cannot apply to

13  this claim because it would exclude satellite embodiments.

14  Therefore, the only interpretation that makes sense is the one

15  we have offered.  So we do not agree that this claim covers

16  both of those scenarios.  We are trying to determine what this

17  unclear phrase means, and we have shown why it has to mean

18  interpretation (a) and not (b).

19            THE COURT:  So does plaintiff agree that -- what

20  defendant is saying that they are saying it would not cover

21  both, it would only cover the terrestrial?

22            MR. EICHMANN:  If we take -- their construction --

23  or at least their interpretation of their construction is that

24  satellite signals can only be transmitted according to this

25  option (a) here.  It is very possible that in some other

1    circumstances, for example in CDMA networks where the base

2    stations -- cellular telephone base stations rely in part in

3    data that is coming in from satellites, that they may still be

4    satellite information that doesn't just fall into this

5    category (a).

6            But what we have presented here is we are willing to

7    assume for circumstances for the purpose of this argument that

8    they are right about that; that satellite signals could only

9    be obtained by transmissions in this first sense.  That still

10   doesn't get you to the point of what about the terrestrial

11   signals?  Can they be obtained by the other one?  They agree

12   that, yes, it can be.

13           Why does it have to be for each of the different

14   types of signals that are received for the different types of

15   determiners that they must receive them; that those signals

16   must be obtained by transmission in the same way?  That is

17   actually very inconsistent with this notion of different

18   techniques, different determiners operating in different ways.

19           MR. KENNERLY:  Your Honor, if I just may, I have one

20   point of clarification.  It is not that interpretation (a) is

21   limited to the satellite scenario, it encompasses both

22   non-terrestrial and terrestrial.  It is the broader in that

23   sense.  It allows both.

24           What interpretation (b) would do would be to exclude

25   the satellite scenario, and that can't be right.  So

1   interpretation (a) is all you are left with.

2            THE COURT:  All right.  Next, Group 1 mobile

3   station.

4            MR. DOVEL:  Your Honor, I want to focus on the

5   portion of defendants' construction where, rather than saying

6   that the mobile station is a receiving device, that where they

7   say in most cases it is also a wireless receiving device.

8            The defendants get that from the definition that is

9   in the specification.  But as we described in our brief, what

10  that definition does is it describes several different cases

11  for the mobile station.

12           It says that -- that it is a transmitting device and

13  that in most cases that follow in the specification, it is

14  also wireless receiving device.

15           So the way we make use of that specification is to

16  look at what case we are in here.  In other words, this term

17  "mobile station" at the beginning of the specification -- this

18  is a very long specification that describes lots of inventions

19  and sub-inventions, lots of embodiments; and we need to

20  identify for the claims where we are at.

21           As it turns at, where we are at is the mobile

22  stations in the claims are both transmitting and receiving

23  devices.  What we can't give the jury is a construction that

24  says that the wireless device is, in most cases, a wireless

25  receiving device.  What does that mean?  Sometimes it is

1    sometimes it isn't --

2              THE COURT:  Let me ask you this, what if we said:  A

3    wireless device that is at least a transmitting device and may

4    include a receiving device?

5              MR. DOVEL:  May include instead of must include?  I

6    think that works, Your Honor.  I think we are left with the

7    rest of the claim language, which we contend will make clear

8    that they are receiving devices, but we can leave that to the

9    rest of the claim language.  I think that works.

10             THE COURT:  Would that work for defendants?

11             MR. SCHENCK:  Yes, sir.

12             THE COURT:  Very well.  We will have that one by

13   agreement then.

14             Let me just restate it:  A wireless device that is

15   at least a transmitting device and may include a receiving

16   device.

17             Okay.  So agreed?

18             MR. DOVEL:  That's agreed, Your Honor.

19             THE COURT:  Defendants --

20             MR. DOVEL:  That part of it.  We still have the

21   issue of portable.  Their construction leaves a potential

22   ambiguity.  They may try to argue that mobile station is

23   defined so that it is not mobile or portable.  The word

24   "device," if it is understood to mean portable and/or mobile,

25   that is, that is not stationary --

1           THE COURT:  Let me just ask.

2           Are defendants trying to limit it to stationary

3    other devices?

4           MR. SCHENCK:  No, sir.  We just don't think the word

5    "portable" adds anything to the word "mobile."

6           THE COURT:  All right.  So you are willing to

7    stipulate that you are not going to contend that portable

8    devices are excluded by this definition?

9           MR. SCHENCK:  That is correct

10          MR. DOVEL:  It is different than that, Your Honor.

11   Stationary devices are excluded.  We want to have it excluded.

12   It is a mobile station.  The whole point of it is it is

13   supposed to be mobile or portable.  It is not a stationary

14   station.  A mobile station, a key attribute is if it is mobile

15   or portable --

16          THE COURT:  You state the stipulation that you will

17   live with then.

18          MR. DOVEL:  The stipulation would be what Your Honor

19   said but put the word "a mobile" in front of it or "a

20   portable."

21          THE COURT:  Say the whole --

22          MR. DOVEL:  A mobile wireless device that is at

23   least a transmitting device and that may be a receiving

24   device.

25          THE COURT:  Can you live with that?

1              MR. SCHENCK:  Yes, sir.

2              THE COURT:  All right.  So we are agreed then:  A

3  mobile wireless device that is at least a transmitting device

4  and may include a receiving device?

5              MR. DOVEL:  Yes.

6              MR. SCHENCK:  Yes, sir.

7              THE COURT:  Okay.  Very good.

8              All right.  I believe Group 2 would be next.

9              MR. DOVEL:  This is a group of terms that has the

10  phrase "communication station" in it.  And TracBeam says that

11  no construction is necessary.  Most of the defendants agree.

12  Only Google wants a construction for these terms.

13              What Google wants to do is narrow it to networked

14  cellular telephony base stations, our construction for

15  "communication station" is that no construction is necessary;

16  and that for communication stations at terrestrial locations

17  we add a definition that describes what terrestrial means.

18  But in no case should it be limited to just networked cellular

19  telephony base stations.

20              Two points, Your Honor.  First, the claim language.

21  These words, nothing about them applies any limitation in

22  terms of their ordinary meaning to networked cellular

23  telephony base stations.  Those are not in the claim language.

24  That is not what communication means.  That is not what

25  communication station at terrestrial locations means.

1              Now let's turn to the specification.  The

2    specification describes important embodiments that are not

3    telephony base stations, so we can't limit it just to cellular

4    telephony base stations.

5              Here are some examples that I put up, Your Honor,

6    from Column 11.  One is base stations of a commercial radio

7    service.  Another is indoor location techniques using a

8    distributed antenna system.  These are special antennas that

9    are used for location purposes.  They are not cellular

10   telephony antennas.

11             Next is something called a low-power,

12   low-functionality base stations denoted location base

13   stations.  These are base stations that are designed to be

14   used for -- again, for location purposes.  They don't

15   necessarily have to be cellular telephony base stations.

16             In addition, the specification also describes base

17   stations that are not networked, non-networked base stations,

18   such as the mobile base station.

19             The specification specifically describes this mobile

20   base station has to be able to function autonomously.  It

21   emphasizes that it is fundamentally different from other types

22   of base stations, the conventional base stations; and, in

23   particular, that it has to be able to operate offline, that

24   is, not attached to a network for substantial periods of

25   time.

1          So the specification doesn't limit communication

2     stations to networked cellular telephony base stations.  It

3     includes important examples -- embodiments that are not

4     cellular telephony and that are not networked.

5          I will conclude the argument with that, Your

6     Honor.

7          THE COURT:  Okay.  Response.

8          MR. SCHENCK:  Your Honor, I think first off we will

9     agree with them that "communication station" by itself doesn't

10    need to be construed.  But when we talk about the terrestrial

11    communication stations or there is a couple of different

12    phrases there, terrestrial stations, those ones I think we

13    need to provide a little bit more guidance to the jury.  And

14    our construction is trying to do that.

15         The reason we are doing that, you know, when you

16    look at the claims and the specification, the claims say

17    "communication station"; but in the spec it talks about base

18    stations.  So at some point somebody is going to have to stand

19    up and say when you are talking a "communication station" in

20    the claims, that means a base station in terms of the

21    specification.  So we thought it would be best to just go

22    ahead and get that out of the way now.

23         THE COURT:  Okay.  Response.

24         MR. SCHENCK:  And again --

25         THE COURT:  Oh, I'm sorry.  Go ahead.  Were you not

1    through?

2              MR. SCHENCK:  He can respond, if you would like.

3              THE COURT:  Go ahead, Mr. Dovel.

4              MR. DOVEL:  "Communication station" certainly

5    includes base stations, terrestrial base stations; but it

6    includes more, Your Honor.  If by base station they mean a

7    networked cellular telephony base station, then it is

8    improper.

9              THE COURT:  Is that what you mean by a base station;

10   a network cellular telephony base station?

11             MR. SCHENCK:  Yes, sir, that is what our

12   construction of terrestrial communication stations is.  I have

13   got more on that, but if he has more to respond on that --

14             THE COURT:  Go ahead and let me hear what more you

15   have on that.

16             MR. SCHENCK:  The reason that we went with network

17   cellular telephony base stations is because that is what this

18   patent is about.  It is about taking a network of cell towers

19   and doing these location techniques that we have been talking

20   about.

21             So when you are looking at the patent, it talks

22   about an objective of the present invention is to do this with

23   a network of base stations.

24             Another objective is to do wireless telephony

25   systems.  A further aspect of the present invention.  There is

1   a network of base stations cooperatively linked for wireless

2   communications.

3           So what the patent is about and the way the

4   patentees describe their invention was using a network of

5   cellular telephony base stations.

6           Now, if y'all don't mind, if y'all can put up

7   y'all's Slide 4.

8           So here we have got their examples of what they say

9   are non-telephony base stations, right?  At the top there we

10  have got one where it says base stations of a commercial radio

11  service.  But the commercial radio service they are talking

12  about there, that is a cell service; that is a cell phone

13  service.  And they use those terms in the patent sort of

14  interchangeably.

15          When you look at that next example there, that is a

16  distributed antenna system.  That is not a base station.  That

17  is not a communication station.  There is no -- there is just

18  no station there.  That is something separate and apart from

19  the base stations and the communication stations.

20          When we get down to that third example there, the

21  low functionality base stations, those low functionality

22  location base stations are actually part of the network.  And

23  if you look at the '231 patent at Column 16, Lines 42 to 45,

24  which I have put up here, the location base stations -- or

25  LBS's -- are on the CDMA network; and they provide limited

1  voice traffic capabilities.  They are part of the network, and

2  they provide cellular telephony.  So that is those three

3  examples.

4          If we can put up y'all's Slide 5.

5          So here, this is their one example to say it is not

6  on the network, and that is the mobile base station.  The

7  mobile base station, it is networked.  It just happens to go

8  offline sometimes.  If I turn my phone off, it is still

9  networked.  It is just off right now.  I mean, that doesn't

10  mean it is not on the network.

11          So we are talking about here networked cellular

12  telephony base stations.  Communication stations, terrestrial

13  communication stations in the claims, that is what it means in

14  terms of this invention.

15          THE COURT:  Okay.  Response.

16          MR. DOVEL:  We are going to go back to Slide 4.

17          And in particular we start with -- item (b), it

18  says:  Base stations of a commercial radio service.  That is

19  not limited to cell phone services.

20          Item (d), the disputed antenna system, those are

21  very much communication stations, Your Honor.  That is the

22  whole point of them.  They are used indoors for

23  communications, but they are not used as part of a cellular

24  telephony network.

25          The patent describes those in some detail by

1    importing the entire specification from another patent that

2    deals with this distributed antenna system.  These are

3    communication stations, and this is an important embodiment of

4    the claims; that is, we have antennas that are used for

5    communications.  They are not part of cellular telephony.  We

6    are also going to use them as part of our location system.

7            A common example that is done today is WiFi like the

8    WiFi systems that are in this building.  They can be used for

9    location.  They send out signals, and your smart phone detects

10   them and can tell you, you are here because of that location.

11   That is a very common example, Your Honor, and that was

12   expressly contemplated by this distributed antenna system.

13   That is what it is all about.

14           Then, finally, Your Honor, the mobile base station.

15   The whole point, again, is that it emphasizes -- at Columns

16   199 -- and 99 and 100 it is able to operate autonomously

17   without being networked, without being part of the network at

18   all.  So this is just another example of a situation where you

19   wouldn't be a networked cellular telephony base station.

20           THE COURT:  Okay.  Final word.

21           MR. SCHENCK:  So if we go back -- I think I have

22   addressed most of the points he made; but if we go back to

23   your Slide 4 and we talk about the antenna system there for

24   the indoor location --

25           THE COURT:  Does that include WiFi hotspots?

1          MR. SCHENCK:  No, Your Honor.  Those antennas

2    described in that other patent he talked about, they are dumb

3    antennas that are only used for doing a location.  It is not a

4    communication.  There is no other communication that is going

5    on there.

6          The point of these patents is I am taking my

7    communication system, my cell phone system, or whatever that

8    exists already, and then I am using as part of that a location

9    thing.  It is not a specific location.  It is an antenna that

10   just helps me find people.

11         WiFi, which isn't talked about in the specification

12   in terms of using it for location -- there are mentions of

13   WiFi but it is not contemplated using WiFi to do anything with

14   location.  So, I mean, that is outside the scope here.

15         But I mean the point is, those antennas are not for

16   communications.  They are not communication stations.

17         THE COURT:  Okay.  Thank you.

18         MR. SCHENCK:  The other thing -- before we move on

19   to "wirelessly," I approached plaintiff this morning to say we

20   agree that no construction is necessary, to not burden the

21   Court.

22         Are y'all okay with that?

23         MR. EICHMANN:  Yes, Your Honor.

24         THE COURT:  With "wireless signal"; is that what you

25   said?

1          MR. SCHENCK:  "Wireless signals" and "wirelessly";

2     there were two of them there.

3          THE COURT:  No construction necessary by agreement,

4     right?

5          MR. SCHENCK:  Yes, Your Honor.

6          THE COURT:  All right.  That would be Group 7.

7          Now, what about Group 5?

8          MR. EICHMANN:  So this is the last one, Your Honor,

9     before we get to the indefiniteness arguments.

10         The parties identify this phrase with slightly --

11    they sort of bracket the claim language a little bit

12    differently.  We contend that the language that needs to be

13    construed, if it does need to be construed, is this:  "An

14    unknown location of said mobile station M."

15         In TracBeam's construction, we say that this is

16    explaining that there is a location of the mobile station for

17    which a resulting location estimate is to be determined.

18         Skyhook is the only defendant that proposes a

19    construction for this.  They propose a location of said mobile

20    station that has not been determined.  This below is the

21    actual claim language.  And specifically the unknown location

22    part is what is in dispute.

23         Claim 1 recites a wherein clause that states:

24    Wherein said location estimation determiners provide different

25    geographical indications of an unknown location of said mobile

1    station M.

2              And so the real dispute, Your Honor, is unknown to

3    who or to what?

4              Skyhook argues in their brief that their

5    construction makes clear that the location must be unknown to

6    the determiner, the mobile station location determiner, at

7    least at the time that the determiner is supplied with input

8    information.  They explain this just a little bit more in

9    their brief.

10             They state that the claim makes clear that the

11   location is unknown up to and including the time the location

12   estimator determiners are supplied with the input data.

13             And what they are referring to is this:  If you go

14   back to the claim language here it states that the

15   geographical indications are provided -- excuse me -- are

16   provided by the determiners when the location estimation

17   determiners are supplied with corresponding input data.  So

18   this down here is what is happening in the claim.

19             You have input data on the left.  It is supplied to

20   the location estimation determiner.  The determiner in

21   response provides geographical indications of an unknown

22   location of said mobile station M.

23             According to Skyhook, up to this point -- denoted by

24   the yellow line -- up to the point that the input date is

25   supplied to the location estimation determiner, the location

1    is unknown.  That is what "unknown" means in their view.

2           After this point they say it is known.  The problem

3    with this is after that point is precisely when the claim

4    refers to the location as an unknown location.  So the

5    knowledge of this location, it cannot be the knowledge of the

6    location estimation determiner because that estimation

7    determiner already knows where that location is and is

8    providing geographical indications of an unknown location.

9    So their interpretation doesn't make sense.

10          Our interpretation reads the language in the context

11   of the entirety of the claim.  This claim is shown to the

12   right here; and it is at the top half of the claim when we

13   have the disputed phrase.  Up there the geographical

14   indications of an unknown location are provided by the

15   determiners; and when we get to the bottom of the claim, we

16   have an output of a resulting location estimate of the mobile

17   station.

18          THE COURT:  Let me just throw this out to you and

19   see if we might short circuit this.  Could plaintiff live

20   with:  Geographical indications of a current location that has

21   not been determined by location estimation determiners?

22          MR. EICHMANN:  No, Your Honor.  Because the point is

23   that the knowledge -- what hasn't yet happened yet, why it is

24   not yet a known location, is because we haven't gotten to this

25   point that generates the resulting location estimate.  It is

1    not about the determiner.  It is about the unrecited structure

2    that performs this resulting location estimate.

3            So the location is unknown in that the thing that is

4    ultimately going to decide what to output as the resulting

5    location estimate, it hasn't decided what the location is.

6    The requesting party, or the party that is going to receive

7    that output, it doesn't know that location.  But the

8    determiner may, in fact, know the location and so may other

9    unrecited and recited structures.

10           So at the top of the claim, it is unknown.  By the

11   time we get to the bottom, we have a location estimate.  And

12   it is now known where that location is.

13           That is why our construction is specifying that it

14   is an unknown location in the sense that it is a location of

15   the mobile station for which a resulting location estimate is

16   yet to be determined -- or is to be determined.

17           THE COURT:  All right.  Response.

18           MR. STERN:  Your Honor, we agree with Counsel that

19   the term in dispute is unknown location.  We have offered

20   slightly different constructions here.  We would agree with

21   Your Honor that a construction that said unknown by the

22   location estimation determiners would resolve the issue here.

23           The claim language makes clear that the determiners

24   provide different geographical indications of the unknown

25   location when they are supplied with corresponding input

1    data.  The question here is not about when the location is

2    known.  The question is about when it is unknown.

3            And what the claim language makes clear is that the

4    location is unknown to the determiner when it is supplied with

5    this corresponding input data.

6            What plaintiff's construction focuses on is the

7    resulting location estimate.  And the construction "to be

8    determined" references that something will be generated at

9    some point in the future.  But the word "unknown" simply

10   refers to something that is presently unknown.  And the claim

11   makes clear it is unknown at a specific time; that is, when

12   the input data is supplied.

13           The term doesn't refer to an unknown estimate, and

14   it doesn't refer to a not yet known location.  It simply

15   refers to a location that is not known to the determiner at a

16   certain time.

17           Now, Mr. Eichmann describes that the determiner

18   provides a geographical indication, but it provides a

19   geographical indication of an unknown location.  So when the

20   determiner receives -- is supplied with the input data, at

21   that time and before it doesn't know the location that it is

22   going to be providing the geographical indications of.

23           THE COURT:  Okay.  Thank you.

24           Final word.

25           MR. EICHMANN:  Your Honor, it is about time because

1  this is how they have framed the argument.  They say it is

2  unknown up until this point and that it is known after that

3  point.

4        Their construction doesn't make sense because the

5  language expressly states the location is unknown; and it is

6  talking about after the point that the location estimation

7  determiner has provided the geographical indications.

8        The only construction that makes sense here is that

9  the location is not yet known to whatever it is downstream

10  that must perform the resulting location estimate.

11        THE COURT:  Okay.  Thank you.  I believe Group 9 has

12  been agreed.  So has Group 13, right?  So that should be all

13  of our groups.

14        MR. EICHMANN:  Your Honor, with respect to Group 13,

15  I think that was the corresponding destination one.  I'm not

16  certain that is on your list or not, but in the briefing --

17        THE COURT:  I had "geographical extent."

18        MR. EICHMANN:  I'm sorry.  That is not what I was

19  talking about.  There was one that got dropped between the

20  time of our opening brief and their responsive brief.

21        THE COURT:  Uh-huh.

22        MR. EICHMANN:  They were seeking a construction for

23  "corresponding destination."

24        THE COURT:  Right.  "A corresponding destination for

25  a responsive output."

1          MR. EICHMANN:  Yes, and so I thought we were talking

2    about that.  The issue, Your Honor, is simply this:  They said

3    we don't any longer seek a construction of that term.

4          THE COURT:  Right.

5          MR. EICHMANN:  I suspect that at the time of expert

6    reports we might see what they argue it means pop back up, so

7    we would like a ruling that "corresponding destination," that

8    term doesn't mean what they are saying it means.

9          THE COURT:  All right.  Any response to that?

10         MR. BELUSKO:  Well, Your Honor, they originally said

11   no construction necessary.  We have agreed it is no

12   construction necessary.  So I think that is where it ought to

13   be left.

14         THE COURT:  Well, but if you are going to have a

15   claim scope dispute, I would just as soon get it -- and I

16   think y'all should, too -- want to get it resolved right now

17   if it is teed up.

18         MR. BELUSKO:  Well, I don't think that their

19   exclusion -- they are saying what it doesn't mean -- is

20   appropriate.  I think that it just should be ordinary meaning.

21   That is the only thing that we have at this point.

22         THE COURT:  Okay.  Well, I will take a look at the

23   briefing and deal with it one way or the other.

24         MR. BELUSKO:  Okay.

25         THE COURT:  All right.  I want to compliment the

1    parties.  You have done an excellent job on a very complex set

2    of patents in boiling this down to these groups; and your

3    organization, your index, everything has been very helpful to

4    the Court, so I appreciate that.

5            I guess this takes us to the summary judgment

6    motions.  Do you have a particular order that you want to go

7    through, with these?

8            MR. KENNERLY:  Your Honor, since it is our motion, I

9    thought defendants would go first; and I believe Counsel is

10   acceptable with that.

11           THE COURT:  All right.

12           MR. KENNERLY:  And I thought we would address them

13   in a particular order, which I can show you.  These are the

14   issues in dispute in the motion for summary judgment.  There

15   are the "when available" limitations of Claim 1 of the '231

16   patent.  Then this issue of the Mp, and that is in Claim 184

17   of the '231 patent.

18           And then there are a couple of issues with Claim 27

19   of the '484 patent and Claim 10 of the '231 patent.

20           And if the Court is acceptable with this and if

21   Counsel agrees, I thought for the Court's benefit we might

22   address each of these essentially term by term.

23           THE COURT:  Oh, yes, let's do that.  But let's -- I

24   tell you, unless y'all have some new argument, I think your

25   first one "when available" is well-briefed, and I think you

1    can just submit it on the briefs, unless you have something

2    new to add to it.

3              MR. KENNERLY:  That would be acceptable, Your

4    Honor.

5              THE COURT:  But I would like to hear some argument

6    on No. 2.

7              MR. KENNERLY:  And on those issues, our associate

8    Mr. Swenson will be addressing those.  I would invite him up.

9              Thank you, Your Honor.

10             THE COURT:  Let me ask this question, first, of

11   defendants on this one:  Is it undisputed that the claims as

12   they were pending in prosecution and as allowed recited Mp

13   rather than Mn in the portion of the claim at issue?

14             MR. SWENSON:  That's correct.

15             THE COURT:  And I didn't see where your briefing

16   pointed to any case that said it is improper for the Court to

17   correct a clear error from the prosecution history.

18             Can you point me to any specific case where it is

19   explicitly ruled that a clear error in the prosecution history

20   cannot be corrected by the Court?

21             MR. SWENSON:  Yes, Your Honor.  Novo Industries --

22             THE COURT:  What is the name of it?

23             MR. SWENSON:  Novo Industries v. Micro Molds Corp.

24             THE COURT:  Okay.

25             MR. SWENSON:  And it is 350 F.3d 1348.  And the pin

1    cite is 1357.  That is a Federal Circuit case from 2003.

2              What that case says, Your Honor, is that a district

3    court has the authority to correct a patent only if the

4    correction is not subject to reasonable debate based on the

5    consideration of the claim language and the specification

6    alone.  So there is a two-part test.  You have to first take a

7    look at the patent --

8              THE COURT:  Are you saying you can consider the

9    prosecution history or not?

10             MR. SWENSON:  You cannot consider the prosecution

11   history.  If the face of the patent in the claims is ambiguous

12   on their own, you don't consider the prosecution history.

13             THE COURT:  Does that case --

14             All right.  Response to that?

15             MR. EICHMANN:  Well, Your Honor, I don't know about

16   that specific case, but that is -- the gist of that is

17   correct, and that is why we did not make the argument to the

18   Court that you should correct it right now.  It does seem to

19   be sort of counter-intuitive that you can't look at the

20   prosecution history.  But in deciding how to approach this, it

21   does seem to be that you have to say it is clear from the face

22   of the patent itself, which includes the spec and the claims,

23   that is the standard you have to meet.  And we are not

24   contending that is the standard met here, which is why we are

25   not asking you to correct an error or asking you to interpret

1    the existing language, because even though it does include an

2    error, it still does make sense.

3           Now, separately from that, we have alternatively

4    taken the parallel path of seeking a certificate of correction

5    with the Patent Office; but we are not asking you to rule on

6    that.

7           THE COURT:  Don't you have some law running against

8    you on that as far as it should have been done before this

9    case was filed?

10          MR. EICHMANN:  Well, there is an issue that they

11   brought up which is one of intervening rights.  So if the

12   Patent Office grants that request and issues a certificate,

13   then there will only be infringement of that particular claim

14   from that point forward.

15          We can get into all the different contingencies of

16   how the parties would handle that going forward, but I don't

17   think that is something that the Court needs to resolve today.

18          THE COURT:  All right.  Go ahead, Counsel.

19          MR. SWENSON:  Your Honor, this issue of the

20   certificate of correction is important because what TracBeam

21   is trying to do in this case is have it both ways.  They are

22   trying to take a look at the claim as it is issued before they

23   filed a certificate of correction, and they also want to say

24   it means the same after the certificate of correction is

25   entered.

1          That just can't be the case because it is clearly

2     indicated here as shown on the screen that the Manual of

3     Patent Examining Procedure says that in order to file a

4     certificate of correction, it has to be an error of

5     consequence.

6          And, moreover, the MPEP also says that the error

7     can't be one that is of a minor typographical nature or

8     readily apparent to one of skill in the art.

9          And that is exactly what we are talking about here.

10    We are talking about looking at the claim as issued.  One of

11    skill in the art wouldn't be able to understand that.

12    TracBeam's action of filing the certificate of correction

13    confirm that.

14          So we would like to make our indefiniteness

15    arguments as to the claims as they issued.

16          THE COURT:  Do either side have any cites to the

17    prosecution history that would show that the mistake was a

18    Patent Office printing error?

19          MR. SWENSON:  Your Honor, we don't dispute that.

20          MR. EICHMANN:  For that reason, we didn't submit

21    it.  We can submit it.  It is very clear -- well, it is a very

22    long set of filed claims.

23          THE COURT:  I think Counsel just said he didn't

24    dispute that.

25          MR. EICHMANN:  And that's why we didn't submit it.

1          THE COURT:  So the only thing we are saying is I
2     can't correct that?  Everybody shook their heads no.  I guess
3     that settles it.  I don't know.
4          MR. SWENSON:  Your Honor, yeah, I mean, the Federal
5     Circuit case law is pretty clear -- we cited it in our
6     brief -- that until that certificate of correction is entered
7     we have to live with the claim as it stands --
8          THE COURT:  Where are you on that process?
9          MR. EICHMANN:  The certificate of correction has
10    been submitted.  I don't believe it has been acted upon yet.
11         Your Honor, they have attempted to use that as some
12    sort of judicial admission that the claim is, therefore,
13    invalid.  That is not what any of that -- the MPEP says.  It
14    says of consequence, and it can't be a minor typographical
15    error.
16         We are allowed to take parallel tracks.  We are
17    allowed to come here and argue to the Court, that, yeah, it is
18    kind of messed up the way it is right now; but it still makes
19    sense if you sit down and work through it.
20         THE COURT:  To a person of ordinary skill in the art
21    is what you are saying?
22         MR. EICHMANN:  Excuse me?
23         THE COURT:  To a person of ordinary skill in the
24    art.
25         MR. EICHMANN:  Absolutely.  And we submit a very

1    detailed declaration from Dr. Rose who explained exactly why

2    it does make sense if you were to just look at what it

3    actually says right now.

4            But this language about of consequence, that does

5    not lead to this conclusion that suddenly we agreed, you know

6    what, it might be prudent to file a certificate of correction

7    just in case the Court goes against us, that is not a judicial

8    admission or any statement of invalidity of the patent.  It is

9    a recognition of a practical issue here that we are standing

10   here disputing what is going to happen with this claim so we

11   are going to take both approaches.

12           THE COURT:  All right.

13           MR. SWENSON:  Your Honor, if they wanted to they

14   could have filed, instead of a certificate of correction, if

15   they really thought it was a minor typographical error, it was

16   readily apparent to one of skill in the art as indicating in

17   the MPEP, the proper route would be for them to file a letter

18   with the Patent Office instead of a certificate of correction.

19   They didn't do that.

20           MR. EICHMANN:  Well, Your Honor, there is a

21   provision that allows a patent owner to send in a letter and

22   say, hey, by the way, you made a mistake, put my letter in the

23   record.

24           Well, that record is over 2,000 pages long in each

25   of these prosecution pages.  Then what happens the next time

1   when we are litigating with the next round of defendants, and

2   they say, well, you submitted a letter but it is buried within

3   these 2,000 pages.

4          A certificate of correction, if it gets issued, will

5   be attached to the back of the patent.  Every time somebody

6   prints it again, it will be right there.

7          So I don't want, however, to get mired down too much

8   into this issue of certificate of correction.  And as much as

9   I would like to tell the Court, we all know it was a mistake,

10  here go ahead and correct it, I don't want to lead the Court

11  into an error because it is just going to end up getting

12  reversed later on.

13         I would like to focus, if we do have time, on the

14  evidence that we have submitted that interprets the existing

15  claim language.

16         It interprets it from the prospective of one of

17  ordinary skill in the art.  It shows that because Mn was used

18  instead of Mp, it doesn't matter in this particular case.  It

19  makes it more different to understand.  But those are

20  overlapping terms because these different terms are used to

21  denote mobile stations that have various characteristics, and

22  some mobile stations can be denoted as each of Mn, Mk; and in

23  the case of the disputed phrase, Mp.

24         And Dr. Rose in his declaration lays that out in

25  detail.  And they don't have a response to it.  They really

1    don't.

2              THE COURT:  Okay.  What is your response to it?

3              MR. SWENSON:  So, there are a couple of disputes

4    with respect to Claim 185 on the indefinite issues.  One of

5    them centers around this distinction between Mn and Mp in

6    Element (C) in determining what is the difference between

7    those two.

8              A lot of ink has been spilled in Dr. Rose's

9    declaration, in plaintiff's option to our motion for summary

10   judgment about whether Mn can be the entire set of the

11   plurality or mobile stations or whether it has to be each

12   mobile station in that entire set.

13             Frankly, Your Honor, I don't think there is any

14   distinction between the two, and I don't think it matters or

15   helps us interpret this claim at all.

16             What this claim is saying as it is written here --

17   or what it appears to say is that you try to determine the

18   location of mobile station Mp by a method of how you are not

19   determining the location of the mobile location Mn.

20             Furthermore, there is another problem with this

21   claim.  And the other problem is that it requires, as written,

22   Mn to be located both using a satellite and without using a

23   satellite.

24             So if you read the language here, it says the

25   location indicative data for Mn is not obtained using -- and

1    it has some verbiage there -- but it basically means using

2    satellite technique.

3            And then it says:  Wherein the geographic data would

4    have to be obtained using a satellite technique.

5            So all of these things together render this claim

6    indefinite, and our expert had a declaration, as well, and so

7    did theirs.

8            THE COURT:  Okay.  Thank you.

9            Let's move on to No. 4, the "wherein for at least

10   one of said first."  I don't believe that TracBeam had filed a

11   response to that; is that correct?  Or have you filed

12   something now?  Or are you agreeing to that?

13           MR. EICHMANN:  It is not correct, Your Honor, and I

14   can explain why.

15           THE COURT:  Go ahead.  All right.  So are you saying

16   you did file a response?

17           MR. EICHMANN:  We filed a response that addressed

18   each of their indefiniteness arguments, yes; our existing

19   response and declaration.  They mischaracterize it to say it

20   doesn't address it.  If you will just bear with me a moment I

21   will show you why it does.

22           This would have made more sense if we had first

23   started with this one.  This is the issue of the input request

24   versus the location request.  They argued the claim uses both

25   terms, and you can't figure out what it is talking about in

1    either circumstance.

2            We submitted Dr. Rose's declaration, which in Figure

3    9a shows this depiction explaining the relationship between

4    those two.  They come back and say, ah, he is talking

5    inconsistently, and there is no way to distinguish.  They

6    don't really have an actual response.

7            And then they argue that with these output criteria

8    phrases -- I have got it labeled as No. 3 here, but it is

9    actually what you just referred to, Your Honor, as No. 4.

10            They say this is not addressed at all in plaintiff's

11    opposition brief.  That is not true.  These phrases, they

12    argue, are indefinite because you can't tell the issue of what

13    the location request or the input request.  So it is very

14    closely tied up into that issue, the prior issue that Dr. Rose

15    spent quite a bit of time addressing.

16            Now, they note in their brief in Footnote 8, they

17    say that in response to these output criteria phrases, we

18    reference Paragraphs 120 to 121 of Dr. Rose's declaration.

19    And they say there is nothing in there that addresses this

20    argument.

21            In those portions of the declaration, Dr. Rose says

22    what I have basically just said; that the certainty of running

23    these phrases is determined.  Any ambiguity is resolved by

24    resolving the ambiguity regarding location request and input

25    request.  And he directs the reader of the declaration to look

1   at that analysis above.

2           And if we look at that analysis above, we see that

3   in Paragraphs 116 and 117 he addresses what he refers to as

4   Element 4.  That is the element that includes these output

5   criteria requests.  And he says that in this section output

6   location data may be according to a first output criteria for

7   the corresponding destination for the first request.

8           And he also -- and that phrase continues to also

9   address the output criteria.  Excuse me.

10          Further down in Paragraph 117 he provides the

11  opinion based on his analysis that the reference to the first

12  request, the one that the output criteria is for, is a

13  reference to the only prior instance in which the terms

14  "first" and "request" are used together.  This refers to the

15  first of the location requests.

16          So while admittedly, perhaps, we could have

17  organized the brief a little bit better and cited to more

18  paragraphs, the paragraph we cited to, is in Dr. Rose's

19  declaration and does address his analysis above, and that

20  analysis shows these phrases are not insolubly ambiguous.

21          THE COURT:  Response.

22          MR. SWENSON:  Your Honor, this doesn't have anything

23  to do with poor organization.  The truth is there is nothing

24  in their brief -- and they don't dispute this in the actual

25  brief itself -- that addresses this fourth argument that we

1    have regarding the output criteria -- or regarding the --

2    regarding the location request.

3            So there is a couple of disputes regarding location

4    request.  And this is the -- this is one of them.  And this is

5    a completely separate dispute from the last one that he is

6    trying to say that their expert declaration and brief

7    addresses.

8            This dispute is what is referred to in Dr. Rose's

9    declaration where they are talking about what it means to

10   refer to a first of the location requests and a second of the

11   location requests.  It is ambiguous as to what that is.

12           Dr. Madisetti, the defendants' expert, addressed

13   that in his declaration.  Dr. Rose provided a response to that

14   in his declaration.  So if you look at the cited paragraphs

15   that plaintiff was just referring the Court to -- and those

16   are Paragraphs 116 and 117 -- what is really being said there

17   from the plaintiff is they are talking about what it means

18   when the claims say "the first request" and "the second

19   request."  Trying to find the antecedent basis of those

20   claims.

21           Those say nothing trying to address our argument

22   about what "output criteria means" and how that is different,

23   which is a completely separate argument that is found in the

24   last section of our motion for summary judgment --

25           THE COURT:  All right.

1          MR. SWENSON:  And I can address that argument --

2          THE COURT:  Thank you.

3          Final word.

4          MR. EICHMANN:  Well, just -- we are a little bit out

5   of order now, but I had showed you, Your Honor, that Dr. Rose

6   does address the "input request" and "location request" terms.

7   He provides a very detailed analysis.  They don't provide a

8   response.

9          With respect to the point about the "output

10  criteria," they are right; our brief doesn't separately argue

11  it.  It points to Dr. Rose's declaration.  But I think that

12  that would be preferable than the Court just simply hearing

13  arguments from an attorney signing off on a brief.  We are

14  pointing to actual evidence from one of ordinary skill in the

15  art, and he is explaining in a very detailed declaration that

16  they try to sort of waive aside, why each of these terms is

17  not, in fact, indefinite.

18          THE COURT:  All right.  Thank you very much.

19          Anything further that the Court can help you with

20  today?

21          MR. KENNERLY:  Your Honor, for defendants, a couple

22  of housekeeping matters.  One, we have provided copies of the

23  presentation for the Court and for the Court's staff.  With

24  Your Honor's permission, we would like to make those of record

25  and provide a copy for the record.

110

1              THE COURT:  All right.

2              MR. KENNERLY:  Second of all, we have the complete

3    file histories of these patents, which are quite long.  They

4    are relevant evidence.  We would like to include those in the

5    record.  We have those on disk.

6              THE COURT:  Okay.  Any objection?

7              MR. EICHMANN:  No, Your Honor.

8              THE COURT:  All right.  You may file them with Ms.

9    Ferguson --

10             MR. KENNERLY:  Your Honor --

11             THE COURT:  -- up here.  And you want your slides

12   made part of the record, you say?

13             MR. KENNERLY:  Yes, Your Honor.

14             THE COURT:  Okay.  Why don't you submit those --

15   file those electronically and plaintiffs may do the same so we

16   don't have to mess with the paper.

17             And, Ms. Ferguson, is the disk the best way to do

18   the prosecution history?

19             THE CLERK:  I believe so, Your Honor.  Does that

20   need to be under seal or anything?

21             THE COURT:  No, it is public record.

22             MR. KENNERLY:  No.

23             One final matter, Your Honor, we have had a problem

24   taking the deposition of Mr. Rose, due to some scheduling

25   issues and then the Hurricane.  We have got a motion filed to

1   actually take that discovery.  We would like dates from

2   plaintiff.  And I understand we are going to work towards

3   that, but I just wanted to highlight that for the Court that

4   we are still seeking that deposition and would like to, if it

5   warrants it, be able to submit a very short brief identifying

6   any additional --

7           THE COURT:  I would anticipate y'all would be able

8   to work that out.  If you can't, you can file a motion.

9           MR. KENNERLY:  Thank you, Your Honor.

10          THE COURT:  Thank you.

11          All right.  We will be adjourned.

12      (Hearing adjourned.)

13

14

15                   C E R T I F I C A T I O N

16

17  I certify that the foregoing is a correct transcript from the

18  record of proceedings in the above-entitled matter.

19

20

21  /s/ Shea Sloan

22  SHEA SLOAN, CSR, RPR
    OFFICIAL COURT REPORTER
23  STATE OF TEXAS NO. 3081

24

25