# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

|  |  |  |
|---|---|---|
| **TRACBEAM L.L.C.,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CASE NO. 6:11-CV-96** |
| | § | |
| **AT&T INC. ET AL.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following motions:

- Defendants AT&T Inc. and AT&T Mobility L.L.C.'s ("AT&T") Motion for Summary Judgment of Invalidity[1] (Docket No. 444);

- AT&T's Motion for Partial Summary Judgment of Non-Infringement (Docket No. 445);

- AT&T's Motion to Exclude the Expert Opinions of Robert Mills (Docket No. 446);

- AT&T's Motion to Exclude Dr. Rose's Opinions on Claim 25 (Docket No. 447);

- AT&T's Motion for Summary Judgment of No Willful Infringement (Docket No. 448);

- Plaintiff TracBeam L.L.C.'s ("TracBeam") Motion for Leave to Rely Upon Supplemental Expert Reports (Docket No. 452); and

- AT&T's Motion for Continuance (Docket No. 509).

---

[1] In its response brief, Plaintiff TracBeam L.L.C. requests the Court grant summary judgment in its favor and find the original application fully discloses and supports asserted claims 25 and 162 of U.S. Patent No. 7,764,231. Docket No. 461.  Accordingly, the Court construes this as a cross-motion for summary judgment.

## BACKGROUND

The Court heard oral arguments for these motions on October 18, 2013 and October 24, 2013.  Having considered the parties' written submissions and oral argument, the Court **DENIES** AT&T's Motion for Summary Judgment of Invalidity (Docket No. 444); **GRANTS IN PART** and **DENIES IN PART** AT&T's Motion for Partial Summary Judgment of Non-Infringement (Docket No. 445); **GRANTS IN PART** and **DENIES IN PART** AT&T's Motion to Exclude Dr. Rose's Opinions on Claim 25 (Docket No. 447); **GRANTS** AT&T's Motion for Summary Judgment of No Willful Infringement (Docket No. 448); **GRANTS** TracBeam's Motion for Leave to Rely Upon Supplemental Expert Reports (Docket No. 452); and **GRANTS IN PART** and **DENIES IN PART** AT&T's Motion for Continuance (Docket No. 509).

## AT&T'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY

TracBeam sued a number of cell-phone related defendants in February 2011, including AT&T, for infringement of claims 25 and 162 ("asserted claims") of U.S. Patent No. 7,764,231 ("the '231 Patent").  The technology is directed to using multiple location techniques to pinpoint a geographic location.  AT&T asserts claims 25 and 162 fail the written description requirement of 35 U.S.C. § 112, ¶ 1, and moves for summary judgment of invalidity.  In response, TracBeam requests that the Court grant summary judgment in its favor and hold the claims do meet the written description requirement.

## APPLICABLE LAW

Federal Rule of Civil Procedure 56(a) provides for summary judgment when "there is no genuine dispute as to any material fact."  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When the summary judgment

movants demonstrate the absence of a genuine dispute over any material fact, the burden shifts to the non-movant to show there is a genuine factual issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  A court must draw all reasonable inferences in favor of the non-moving party. *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007).

The written description requirement found in 35 U.S.C. §112, ¶ 1 prevents an applicant from later asserting that he invented that which he did not. *Amgen Inc. v. Hoechst Marion Roussel*, 314 F.3d 1313, 1330 (Fed. Cir. 2003).  To "guard[] against the inventor's overreaching," the written description requirement "insist[s] that [the inventor] recount his invention in such detail that his future claims can be determined to be encompassed within his original creation." *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1561 (Fed. Cir. 1991).  This means that all of the limitations must appear in the specification. *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997).  The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification. *Id.*  Rather, the application itself must describe an invention and do so in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought. *Id.*

Compliance with the written description requirement is assessed with respect to the application as filed, not the specification as issued. *See Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc).  New claims or other added material must find support in the original specification. *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. GE*, 264 F.3d 1111, 1118 (Fed. Cir. 2001).  Thus, as a matter of law, the written description requirement cannot be met by new matter added during prosecution. *See Ariad*, 598 F.3d at

1336.  Compliance with the written description requirement is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party. *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008).

## ANALYSIS

AT&T argues the asserted claims require a mobile station receiving satellite signals but the original specification does not provide support for a mobile station (e.g., a cell phone) receiving satellite signals.   The parties agree the asserted claims require a mobile station that receives satellite signals and that the original specification discloses a mobile *base* station that receives satellite stations.   However, AT&T's argues the disclosure a mobile base station receiving satellite signals is insufficient to meet the written description requirement.

TracBeam counters the written description requirement is met by one of two theories. First, TracBeam argues the specification discloses a mobile station receiving satellite signals because it discloses an embodiment of a mobile *base* station that contains both a mobile station and a GPS receiver.   The mobile base station receives satellite (GPS) signals via its GPS receiver.  TracBeam contends this embodiment therefore "discloses the receipt of satellite signals *at* a mobile station."  Docket No. 490 at 2 (emphasis added).

However, the asserted claims are not satisfied by the receipt of satellite signals *at* the mobile station.   The claims require the mobile station itself to receive the satellite signals.  The specification describes a mobile base station containing a satellite (GPS) receiver and a mobile station as separate and distinct components.  Docket No. 444 at 12; U.S. Patent Application No. 09/194,367 at 17–18 (filed Nov. 24, 1998).  While it may be an obvious variation to move the GPS receiver from the mobile base station to the mobile station, obvious variations do not satisfy the written description requirement.  *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed.

Circ. 1997) ("[I]t is not sufficient for purposes of the written description requirement of 112 that the disclosure, when combined with the knowledge in the art, would lead one to speculate as to modifications that the inventor might have envisioned, but failed to disclose.").

TracBeam's second theory, however, presents a genuine question of fact.  TracBeam asserts the written description requirement is satisfied because the originally-filed specification's disclosure of a mobile base station meets all the limitations of the Court's construction of the claim term "mobile station."[2]  The Court construed mobile station as "a mobile wireless device that is at least a transmitting device and may include a receiving device."  Docket No. 352 at 4. Conversely, AT&T argues a mobile base station is not a "wireless device."  Docket No. 479 at 1.

AT&T argues the specification clearly delineates between a mobile base station and a mobile station.  According to AT&T, the specification generally describes a mobile station as a



mobile phone and a mobile base station as "a part of the network infrastructure that receives and processes wireless communications from the mobile station."  Docket No. 444 at 1.  For example, Fig. 4, reproduced to the left, illustrates how the patentee used the terms mobile station (140) and mobile base station (148).  '231 Patent, Fig. 4.

TracBeam contends that mobile base stations and mobile stations are not limited to the Fig. 4 embodiment.  Rather, the original specification discloses a mobile base station is a piece of equipment for wireless communication that transmits and receives signals.  TracBeam asserts this meets the limitations of (1) a wireless device that (2) at least transmits, and (3) may include a

---

[2] The Court did not construe the term "mobile base station."  Moreover, "mobile base station" does not appear in claim 25 or 162.

receiving device.  Therefore, according to TracBeam, the original specification discloses a mobile station that receives satellite signals.

This dispute hinges on whether a mobile base station, as described by the original specification, is a "wireless device."  A reasonable jury could find for either party on this issue. Therefore, this is a genuine dispute of a material fact.  *See Liberty Lobby, Inc.*, 477 U.S. at 248. Accordingly, AT&T's Motion for Summary Judgment of Invalidity (Docket No. 444) and TracBeam's request for summary judgment in its favor (Docket No. 461) are **DENIED**.

## AT&T'S MOTION FOR PARTIAL SUMARY JUDGMENT OF NON-INFRINGEMENT

AT&T requests the Court find non-infringement as to three of the four serving mobile location centers ("SMLC") used by AT&T's E911 network.  TracBeam's original expert report on infringement requires the SMLCs to perform a software function known as a "sanity check" to infringe the asserted claims.  In its rebuttal expert report, AT&T produced additional evidence that shows three of the four SMLCs do not perform the sanity check function.

TracBeam does not dispute AT&T's rebuttal evidence and admits that these three SMLCs do not infringe under the theory described in its original expert report.  Instead, TracBeam argues the three SMLCs infringe under an alternative infringement theory that does not rely on the sanity check function, as provided in its supplemental report.  Because TracBeam's supplemental report was filed after the deadline in the Docket Control Order, AT&T's motion does not address its arguments.   However, the Court grants TracBeam's motion to rely upon this report. Consequently, AT&T's summary judgment motion is **GRANTED** only to the extent that the three specified SMLCs do not infringe under any infringement theory which requires sanity check and **DENIED** in all other respects.  Accordingly, AT&T's Motion for Partial Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

**AT&T'S MOTION TO EXCLUDE THE EXPERT OPINIONS OF ROBERT MILLS**

Mr. Mills is TracBeam's expert on damages.  The parties agree an appropriate royalty rate is based on AT&T's cost savings from using the patented technology compared to the best available non-infringing alternative.  Mr. Mills opines that the cost savings to AT&T is the cost of building a new location network infrastructure at the price of $742,056,000.  Mr. Mills' report also references revenue-sharing agreements between AT&T and various providers of location-based services and products.  Though these are not patent licenses, Mr. Mills relies on these agreements to determine if his proposed royalty rate of 50% was "inconsistent with AT&T's real world negotiations."  Docket No. 460 at 13.  AT&T argues Mr. Mills uses bad methodology and the revenue-sharing agreements should be excluded.

**APPLICABLE LAW**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides that "scientific, technical, or other specialized knowledge" may be admissible where such testimony "will help the trier of fact to understand the evidence or to determine a fact in issue . . . ." FED. R. EVID. 702.  Such testimony is only admissible "if [1] the testimony is based upon sufficient facts or data, [2] the testimony is the product of reliable principles and methods, and [3] the expert has reliably applied the principles and methods to the facts of the case." *Id.*; *see also Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592–93 (1993).  In applying these standards, district courts are charged to act as "gatekeepers" in order to ensure that "any and all scientific evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. 579, 589 (1993).  The primary concern of the "gatekeeper" function "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the

7

relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  To that end, any step an expert takes in formulating his opinion "that renders the analysis unreliable . . . renders the expert's testimony inadmissible." *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 670 (5th Cir. 1999).

A reasonable royalty is based on "what a willing licensor and licensee would bargain for at a hypothetical negotiation on the date infringement started." *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989).  One way to value a reasonable royalty is to estimate the "cost savings from use of the infringing product." *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1240 (Fed. Cir. 2011) (citing and quoting *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1080–81 (Fed. Cir. 1983).  The hypothetical negotiation is limited by acceptable non-infringing alternatives.  *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002).  ("The economic relationship between the patented method and non-infringing alternative methods, of necessity, would limit the hypothetical negotiation.").

## ANALYSIS

AT&T claims Mr. Mills wrongly uses the cost of AT&T's entire location network rather than the costs savings from using the patented methods.  AT&T argues TracBeam should have determined the damages based on the value of the invention.  At the hearing, AT&T stated "one way that the damages expert could actually assess the value of the invention . . . would be take the difference in cost between the redundant system and the existing system.  And a cost savings as between those two might—I haven't looked—they haven't done that analysis, but might actually tend to show something about the actual invention itself."  Docket No. 522 at 96–97.

Though AT&T claims the cost of a new network is an inaccurate measure and inflates the base for the royalty analysis, AT&T fails to offer evidence assessing the value of the patented

method itself.  TracBeam contends the cost of AT&T's location network is an accurate measure of the patent's value because the other non-infringing alternatives are impractical or more expensive than a new network.  Docket No. 460 at 7–11 (TracBeam explaining why AT&T's non-infringing alternatives have been rejected by AT&T management).  Therefore, according to TracBeam, the cost of building a new, non-infringing location network is the value of the patented method.

This dispute presents a factual question for the jury whether the cost of building a new location network is equivalent to the value provided by the patented methods.  A plaintiff must tie damages for a patented invention to the value of the patented technology.  *See Riles*, 298 F.3d at 1312 (Fed. Cir. 2002).  In *Riles*, the plaintiff attempted to tie the value of a method of anchoring offshore oil platforms without mud mats to the cost of the offshore drilling platform itself.  *Id.* at 1311–12.  The Federal Circuit held this was a legally incorrect way to value the patent because the drilling platform performs operations that do not infringe the patented method of the rig installation.  *Id.* ("Shell may lawfully use its platform without infringing a patent on a method of anchoring the jacket during erection.").  Here, TracBeam argues the value of its patented method of using multiple location techniques to locate a cell phone is the cost of a new location network.  Though this appears to be a gross over-valuation as in *Riles*, AT&T never introduces evidence to show a location network can perform non-infringing operations.  AT&T admitted it had not done so because it is "the plaintiff's burden to do that."  Docket No. 522 at 97.  At the hearing, TracBeam argued the location network would only be used to provide non-infringing E911 service.  *Id.* at 90.  Consequently, the Court is unable to apportion anything less than the full cost of a location network to the patented technology.

AT&T correctly asserts non-infringing alternatives can serve as a cap on the damages and provides several alternatives that are significantly cheaper than the cost of a new location network.   TracBeam, though, has produced admissible evidence AT&T's non-infringing alternatives are either impractical or more expensive than the cost of a location network.  Docket No. 460 at 7–11.  The jury is the appropriate forum to determine if TracBeam is factually correct. A reasonable jury, considering this record, could find that the value of the patented methods is equivalent to the cost of a location network, and AT&T's request to strike Mr. Mills report in its entirety is **DENIED**.

However, Mr. Mills' reliance on the revenue-sharing agreements is improper. Agreements between AT&T and third-parties that provide services and products unrelated to the patent are not part of the hypothetical negotiation.  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011).  These agreements are not patent licenses, but are revenue-generating service and purchase contracts.  TracBeam admits as much.  Docket No. 446, Ex. 13, Mills' Report July 9, 201 at 85:20–23, 199:19–200:2, 85:17–19, 200:3–6.  However, TracBeam contends it did not use these agreements to arrive at its 50% royalty rate, but only as a check that such a number is realistic.  Docket No. 446 at 13.  Nevertheless, irrelevant financial information is still not admissible even when used as a "check" for an otherwise proper reasonable royalty analysis.  *See Uniloc*, 632 F.3d at 1321 (rejecting plaintiff's use of the value of the entire market as a "check" to its damages award).  These agreements, which TracBeam asserts is not necessary to determine its royalty rate, will only serve to create a prejudicial effect upon the jury. Therefore, TracBeam may not rely upon them.

## CONCLUSION

For the forgoing reasons, the Court **DENIES** AT&T's request to strike Mr. Mills' report in its entirety, and **GRANTS** AT&T's request to exclude the revenue sharing agreements. Accordingly, AT&T's Motion to Exclude the Expert Opinions of Robert Mills is **GRANTED IN PART** and **DENIED IN PART**.

## AT&T'S MOTION TO EXCLUDE DR. ROSE'S OPINIONS ON CLAIM 25

Dr. Rose is TracBeam's expert on infringement and validity.  AT&T argues Dr. Rose's infringement opinion is inconsistent with both his validity opinion and the Court's construction of claim 25 and therefore must be excluded.  The dispute between the parties is whether Step 1 and Step 2 of claim 25 are optional or whether all there steps must be performed.  The source of the dispute is the meaning of the un-construed term "when" in claim 25.  AT&T argues "when" denotes a sequential order to three mandatory steps.  TracBeam contends "when" means "when available" and hence Steps 1 and 2 need only be performed under certain conditions.

The relevant portions of claim 25, with the Court are labeling in brackets and terms of emphasis underlined, is as follows:

> "A method for providing a location estimate of a wireless mobile station dependent upon measurements of wireless signals . . .
> [**Preamble 1**] wherein <u>when provided </u>with the first collection, the predetermined corresponding location technique uses the first collection to determine a location for the mobile station . . .
> [**Preamble 2**] wherein for receiving a second collection of measurements obtained from wireless signals transmitted between said mobile station and one or more fixed location terrestrial stations, <u>at least when said first collection is not available,</u> there is a predetermined corresponding location technique for determining second location information of the mobile station . . .
> <u>comprising performing the following steps</u> by computational equipment:

[**Step 1**] first obtaining the first location information of said mobile station, the first location information determined by computational machinery <u>when said corresponding location technique for using the first collection [of measurements] is supplied</u> with an instance of said first collection;

[**Step 2**] second obtaining the second location information of said mobile station, the second location information determined by computational machinery <u>when said corresponding location technique for receiving the second collection [of measurements] is supplied</u> with an instance of said second collection . . . "

'231 Patent col.180:20–182:8.

## APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope.  *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).  This intrinsic evidence includes the claims themselves, the specification, and the prosecution history.  *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861.  Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent.  *Phillips,* 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314.  A term's context in the asserted claim can be

very instructive.  *Id.*  Other asserted or unasserted claims can also aid in determining the claim's

meaning because claim terms are typically used consistently throughout the patent.  *Id.*

## ANALYSIS

AT&T summarizes Steps 1 and 2 as *obtain the first/second location information when the*

*first/second location technique is supplied*.   AT&T interprets "when" as indicating the

procedural order of a mandatory step.   Therefore, the meaning becomes first *obtains the*

*first/second location information at the time the first/second location technique is supplied.*

According to AT&T, the term of art "comprising" in the claim requires this understanding.  The

claim recites "comprising . . . the following steps," and then lists Step 1, Step 2, and Step 3.  '231

Patent col. 180:55–56.  Therefore, according to AT&T, the steps cannot be optional and "when"

must indicate the timing for each step.

TracBeam relies on Preamble 1 and Preamble 2 to argue "when" indicates a conditional

limitation.  TracBeam claims Step 1 obtains the first location information only when the system

provides the first collection of measurements.   As Preamble 1 recites, the "predetermined

corresponding location technique uses the first collection to determine a location for the mobile

station," not every time, but only "when [the first collection is] provided" by the system.  *Id.*

Preamble 2, according to TracBeam, further confirms that the first collection of satellite

measurements is not always going to be available by reciting "at least when the first collection is

not available."  *Id.*

Preamble 2 recites Step 2 must be performed "at least when said first collection is not

available."  *Id.*  According to TracBeam, this means Step 2 must be performed when the first

collection of measurements is not available (when Step 1 is not performed), but Step 2 may or

may not be performed when the first collection is available (Step 1 is performed).  The net effect

of TracBeam's conditional limitations is as follows:  If the first collection is available, then the invention may perform all three steps, or it may perform only Steps 1 and 3; if the first collection is not available, then the invention performs Steps 2 and 3.

TracBeam's construction is correct.  Given the context of the term "when," it indicates a conditional requirement as the Preambles make clear.  The Preambles clarify Steps 1 and 2 are conditional depending on whether the system provides a first collection of measurements. AT&T's reading, on the other hand, contradicts the plain and ordinary meaning of the Preambles.  Moreover, AT&T's provides no support for its argument that conditional steps are inconsistent with the transitional word "comprising."  Therefore, the Court resolves the parties' claim construction dispute concerning claim 25 as follows:

(1) "first obtaining" step: the step of "first obtaining the first location information of said mobile station, the first location information determined by computational machinery when said corresponding location technique for using the first collection is supplied with an instance of said first collection" need not be performed in those circumstances in which the "first collection of measurements" is not available;

(2) "second obtaining" step: the step of "second obtaining the second location information of said mobile station, the second location information determined by computational machinery when said corresponding location technique for receiving the second collection is supplied with an instance of said second collection" may but need not be performed in those circumstances in which the "first collection of measurements" is available.

AT&T argues that this construction contradicts Dr. Rose's validity report, wherein Dr. Rose distinguishes prior art by stating the invention requires all three steps to be performed.  To the extent that Dr. Rose uses the construction inconsistently between his validity and

infringement reports, such a concern is better left for cross-examination.  Likewise, whether this otherwise proper construction raises validity concerns is not an appropriate reason for altering it. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1327 (Fed. Cir. 2005).

## CONCLUSION

For the foregoing reasons, TracBeam's proposed construction is adopted and AT&T's Motion to Exclude Dr. Rose's Opinions on Claim 25 is **DENIED**.

## AT&T'S MOTION FOR SUMMARY JUDGMENT OF NO WILLFUL IFNRIGNEMENT

The Court denied AT&T's motion to dismiss TracBeam's claim of willful infringement on March 27, 2012.  AT&T moved to dismiss the claim because TracBeam failed to allege AT&T possessed pretrial knowledge of the issued '231 Patent.  The parties did admit, however, that approximately ten years prior to the '231 Patent issuing, the inventor contacted AT&T regarding the patent application.  The Court noted TracBeam would likely need evidence of AT&T's knowledge of the issued '231 Patent and afforded TracBeam the opportunity for discovery on the issue.  Docket No. 196 at 5 ("[I]t is unlikely that [TracBeam] could proceed to trial based *solely* on pre-issuance knowledge.").  TracBeam has been unable to produce such evidence.  Nevertheless, TracBeam still contends that AT&T willfully infringed the '231 Patent by various legal theories that are unsupported in the law or require facts not present in the record.  Since TracBeam has no additional evidence to support its claims of willful infringement, AT&T's Motion for Summary Judgment of No Willful Infringement is **GRANTED**.

## TRACBEAM'S MOTION FOR LEAVE TO RELY UPON SUPPLEMENTAL EXPERT REPORTS

TracBeam served its original reports on damages and infringement under the belief that AT&T's accused E911 network used the sanity check feature for all calls.  These reports were timely filed on the June 10, 2013 deadline set in the Docket Control Order.  AT&T's rebuttal

non-infringement report attached evidence showing approximately 2% of E911 calls involved a sanity check.  TracBeam responded by serving Dr. Rose's supplemental report on infringement on August 28, 2013 and Mr. Mills' supplemental report on damages on August 29, 2013 ("supplemental reports").  The supplemental reports argue calls made in the E911 network can infringe regardless of whether sanity check is used.  AT&T opposes TracBeam's motion to rely on these supplemental reports arguing the case is too close to trial to allow TracBeam's new infringement theories.

TracBeam argues the infringement theories in the supplemental reports are fully consistent with its infringement contentions in the case.  In addition, TracBeam contends these reports are required under Rule 26(e) in response to the new evidence AT&T disclosed in its rebuttal reports.  AT&T counters the evidence in its rebuttal report is consistent with the evidence it already produced.  AT&T only included it because TracBeam's original expert report was the first time TracBeam highlighted the significance of the sanity check feature.

This dispute is magnified by the fact AT&T took Dr. Rose's deposition before it served its rebuttal reports.  At the deposition, AT&T asked a series of questions which appear to limit Dr. Rose's infringement positions to the sanity check feature.  Docket No. 445, Ex. B, Rose Deposition at 179:9-16.  Following the deposition, AT&T served its rebuttal reports with the additional evidence showing the sparing use of sanity check in AT&T's network.

In light of the questionable circumstances regarding Dr. Rose's deposition and the significant amount of information AT&T supplied in its rebuttal report concerning sanity check, TracBeam is allowed to rely on its supplement its reports.  Accordingly, TracBeam's Motion for Leave to Rely Upon its Supplemental Reports is **GRANTED**.

## AT&T'S MOTION FOR CONTINUANCE

On October 18, 2013, the Court granted TracBeam's Motion for Leave to Rely Upon Supplemental Expert Reports on October 18, 2013.  Docket No. 506.  Subsequently, AT&T filed a motion for continuance in order to address the infringement theories contained in these supplemental reports.  AT&T argues it needs 90 days to gather information from third party suppliers and to brief its 20 U.S.C. § 1498 defense.  TracBeam opposes this motion and contends AT&T's prejudice is self-inflicted from failing to prepare for the possibility the Court allowed TracBeam's supplemental reports.

Even though AT&T is partially responsible for its predicament by failing to prepare for the scenario in which the Court allowed TracBeam's supplemental reports, a short continuance is appropriate considering the significant change in infringement theories between TracBeam's original and supplemental reports.  AT&T presents a good faith argument it was diligently preparing for trial during the seven weeks between the date TracBeam served its supplemental reports to the date the Court ruled on its admissibility.  During this time, AT&T was involved in at least five depositions, six motions, and multiple other Court filings in preparation for the October 18 and 24 hearings.  Docket No. 509 at 12–13.  Furthermore, AT&T should not be denied an opportunity to properly defend itself considering that TracBeam's supplemental report was untimely filed.  Therefore, the Court **GRANTS** AT&T's request to extend the trial date. However, AT&T has not established a need for a 90-day continuance.  Instead, the trial date is reset for **December 9, 2013** as outlined in the Court's October 25, 2013 Order.  Docket No. 517. Accordingly, Court **GRANTS IN PART** and **DENIES IN PART** AT&T's Motion for Continuance.

## CONCLUSION

For the foregoing reasons, the rulings on the motions are as follows:

- AT&T Motion for Summary Judgment of Invalidity (Docket No. 444) is **DENIED**;

- AT&T's Motion for Partial Summary Judgment of Non-Infringement (Docket No. 445) is **GRANTED IN PART** and **DENIED IN PART**;

- AT&T's Motion to Exclude the Expert Opinions of Robert Mills (Docket No. 446) is **GRANTED IN PART** and **DENIED IN PART**;

- AT&T's Motion to Exclude Dr. Rose's Opinions on Claim 25 (Docket No. 447) is **DENIED**;

- AT&T's Motion for Summary Judgment of No Willful Infringement (Docket No. 448) is **GRANTED**;

- Plaintiff TracBeam L.L.C.'s ("TracBeam") Motion for Leave to Rely Upon Supplemental Expert Reports (Docket No. 452) is **GRANTED**; and

- AT&T's Motion for Continuance (Docket No. 509) is **GRANTED IN PART** and **DENIED IN PART**.

    **So ORDERED and SIGNED this 25th day of November, 2013.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**